**COMMONWEALTH OF PENNSYLVANIA,**
Appellee,

v.

**Gideon ASAMOAH, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 2002.
Filed Oct. 17, 2002.

Jennifer A. Pollock, York, for appellant.

Elizabeth C. Cannon, Assistant District Attorney, York, for Commonwealth, appellee.

Before: DEL SOLE, P.J., HUDOCK and BROSKY, JJ.

OPINION BY HUDOCK, J.

■ ¶ 1 This is an appeal from the judgment of sentence entered after a judge, sitting without a jury, found Appellant guilty, at a trial *de novo*, of the offense of "loitering" in contravention of an ordinance of the City of York, Pennsylvania.[1] We reverse.

¶ 2 The trial court has explained the facts underlying this appeal in the following apt manner:

Officer Scott Edward Nadzom of the York City Police Department observed [Appellant] and another individual standing on the sidewalk in a "high drug area" in York City, [Appellant] holding currency in his right hand, the other individual with his back toward the officer. Officer Nadzom and another officer were in the "Street Crime Reduction" vehicle. As the vehicle approached the two (2) men, [Appellant] turned and walked away. The other individual turned and walked toward the vehicle, dropping a clear plastic zip-lock bag approximately one (1) inch by one (1) inch. There was an off-white substance in the bag which the officers believed to be cocaine. This individual, later identified as Durrell Scales, was taken into custody.

Upon circling the block, the officers saw [Appellant] standing on the sidewalk, still holding the money in his right hand. Officer Nadzom approached [Appellant] and placed him under arrest.

Trial Court Opinion, 1/8/02, at 2–3.

¶ 3 Appellant was tried before a district magistrate who found him guilty of violating the municipal anti-loitering ordinance. Appellant pursued an appeal, and a trial *de novo* was conducted in the Court of Common Pleas of York County. The trial court found Appellant guilty and sentenced him to pay a fine of $300.00 and the costs of prosecution. Appellant filed a timely notice of appeal and, pursuant to the trial court's order, a timely concise statement of issues raised on appeal. Appellant challenges the constitutionality of the ordinance as well as the sufficiency of the evidence. Because we have concluded that the ordinance is unconstitutional, we need not reach the sufficiency argument.

■ ¶ 4 With regard to the first issue, we note that the principles and rules of statutory construction apply equally to the interpretation of statutes and to local laws. *Hamilton v. Unionville–Chadds Ford School District*, 552 Pa. 245, 249, 714 A.2d 1012, 1014 (1998). Ordinances are presumed to be constitutional, and a heavy burden is placed on a person who challenges the constitutionality of an ordi-

---

1. Codified Ordinances of the City of York, General Offenses Code, § 713.02 (Ordinance 14–2000, enacted September 5, 2000). Commonwealth Court of Pennsylvania has jurisdiction over appeals from final orders of the courts of common pleas in any case implicating the application, interpretation or enforcement of a local ordinance. 42 Pa.C.S.A. § 762(a)(4)(i)(B). However, the Commonwealth has not objected to this Court exercising jurisdiction over the instant appeal. Thus, pursuant to Rule of Appellate Procedure 741(a), our jurisdiction is perfected.

nance. *Commonwealth v. Ebaugh,* 783 A.2d 846, 849 (Pa.Cmwlth.2001). An ordinance is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited by the law. *Id.* "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Commonwealth v. Cotto,* 562 Pa. 32, 37–38, 753 A.2d 217, 220 (2000) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

∎ ¶ 5 An enactment will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application. *Cotto,* 562 Pa. at 38, 753 A.2d at 220. As generally stated, the void for vagueness doctrine requires that a penal enactment must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Commonwealth v. Barud,* 545 Pa. 297, 304–05, 681 A.2d 162, 165 (1996). *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (holding that a municipal ordinance is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his actions are prohibited or if it encourages arbitrary and erratic arrests and convictions).

∎ ¶ 6 An enactment is "overbroad" if, by its reach, it punishes constitutionally protected activity as well as illegal activity. *Barud,* 545 Pa. at 305, 681 A.2d at 165. A municipal anti-loitering ordinance may be attacked if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. *City of Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). Even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Id.* "[T]he freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 53, 119 S.Ct. 1849. "An individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside the frontiers that is a part of our heritage." *Id.* at 54, 119 S.Ct. 1849 (quotation omitted).

∎ ¶ 7 The municipal ordinance at issue in this case contains the following relevant provisions for the prohibition of "loitering":

(a) *Prohibited Conduct.* No person shall loiter in any public or private place at a time, or under any circumstance or in such a manner as to:

(1) Obstruct any public street, public highway, public sidewalk or any other public place or building by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians.

(2) Create or cause to be created any disturbance or annoyance to the comfort and repose of any person.

(3) Create or cause to be created an immediate, actual, physical violent reaction from another person, which violent reaction will cause a threat to the peace and order of the public.

(4) Interfere with, obstruct, harass, curse or threaten or do physical

harm to another member or members of the public.

(5) Commit in or upon any public street, right of way, sidewalk or any other public place or building any act which interferes with the uninterrupted use of the property or lawful business conducted thereon, including the facing or fronting on any such public street, right of way, sidewalk, or place, all of which prevents the free and uninterrupted ingress, egress, and regress therein, thereon and thereto.

(6) Commit acts that demonstrate an intent to hire a prostitute or any other person to engage in sexual activity and/or who loiters in or within view of any public place for the purpose of being hired to engage in sexual activity. Conduct included herein shall include, but not be limited to, the random waving at or flagging down of vehicles.

(7) Commit acts that demonstrate an intent or desire to enter into or encourage third parties to engage in a drug transaction.

(b) *Exceptions.*

(1) A gathering of persons shall not be considered to be guilty of loitering if it has a legitimate purpose for being in the public place.

(2) Nothing herein shall be construed to prohibit orderly picketing or other lawful assembly.

Codified Ordinances of the City of York, General Offenses Code, § 713.02(a) and (b) (Ordinance 14–2000, enacted September 5, 2000). The ordinance further states that a police officer has responsibility as follows:

When any person causes or commits any of the conditions enumerated in subsection (a) hereof, a police officer, in the exercise of reasonable judgment, may order that person to stop causing or committing such conditions and to move on or disperse. Any person who fails or refuses to obey such an order shall be guilty of a violation of this section.

*Id.,* § 713.02(c).

¶ 8 The ordinance contains certain definitions, including explanations of the terms "loitering," "private place," and "public place." *Id.,* § 713.02(d). "Loitering" is defined as follows:

"Loitering" includes the following activities: lingering, hanging around, delaying, lurking, hiding, prowling, sauntering [and] moving slowly about, where such conduct is not due to physical defect or conditions [sic], the systematic checking of doors and windows or the flight or concealment of a person, who is engaged in one of the above activities, upon appearance of a police officer and includes physical and verbal acts which are commonly associated with the commission of a crime or the attempt to commit a crime. This definition includes committing the aforementioned acts on foot, as well as by motor vehicle, bicycle, or any other means of conveyance.

*Id.,* § 713.02(d)(1). The ordinance neither defines nor specifies the "acts that demonstrate an intent or desire to enter into or encourage third parties to engage in a drug transaction" pursuant to subsection (a)(7).

¶ 9 At the outset of our analysis, we note that Appellant was not convicted of possessing contraband substances nor was he observed possessing any contraband substances. Rather, he was observed standing on a public sidewalk holding currency in his right hand. N.T., 3/28/91, at 5. Appellant was standing near another person who had his back to the police officer who made the arrest in this case. *Id.* at 4. At the approach of the police officer, Ap-

pellant turned and walked away. *Id.* at 5. The person who had been standing near Appellant walked in a different direction. *Id.* at 5–6. The other person discarded a plastic baggie that contained an off-white substance that was not crack cocaine. *Id.* at 6. The officer and his partner circled the block in their squad car and observed Appellant on a nearby street. *Id.* Appellant was still holding money in his hand. *Id.* The police officer arrested Appellant pursuant to subsection (a)(7) of the loitering ordinance, for committing acts demonstrating an intent or desire to enter into a drug transaction.

¶ 10 Vagueness may invalidate a criminal law for either of two independent reasons. *City of Chicago*, 527 U.S. at 56, 119 S.Ct. 1849. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits. *Id.* Second, it may authorize and even encourage arbitrary and discriminatory enforcement. *Id.* The York City ordinance at issue in this case places "unfettered discretion" in the York City police in that it encourages arrests based on anticipation of future criminality. A loitering ordinance that encourages arrests in anticipation of future criminality is contrary to the concepts underlying the American legal system. *Papachristou*, 405 U.S. at 168–70, 92 S.Ct. 839. Due process requires fair and equal application of laws to all citizens. *Waters v. McGuriman*, 656 F.Supp. 923, 928 (E.D.Pa.1987). In our constitutional system, the police may only seize and detain or arrest a person if probable cause exists to believe he has committed a crime, or if reasonable suspicion based on articulable facts exists to warrant an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Waters, supra* (discussing *Terry, Kolender v. Lawson*,

461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), and *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

¶ 11 The York City anti-loitering ordinance provides no guidance as to what constitutes an act demonstrating the "intent or desire to enter into a drug transaction." Thus, police officers are free to order any person to "move on or disperse," as they please, pursuant to subsection (c) of the ordinance. The ordinance, therefore, constitutes a "vague" law because it impermissibly delegates basic policy matters to police officers for resolution on an *ad hoc* and subjective basis as prohibited by *Cotto, supra.* Furthermore, by proscribing and punishing constitutionally protected activities such as "hanging around" and "sauntering," the ordinance must be deemed to be "overbroad" under *Waters* and *Barud, supra.* Finally, because the ordinance does not place the accused on notice as to how far he must "disperse" and for how long he must remain away from the site he was ordered to leave, the ordinance is unclear in its description of the loiterer's duty to obey the dispersal order. *See City of Chicago*, 527 U.S. at 59–60, 119 S.Ct. 1849 (discussing dispersal orders under municipal anti-loitering ordinances). For these reasons, we find the York City ordinance unconstitutional. We reverse Appellant's conviction and grant a discharge.

¶ 12 The judgment of sentence is reversed. Appellant is discharged.