873 A.2d 698

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Don R. ICKES, Appellee.**

Supreme Court of Pennsylvania.

Submitted July 14, 2004.

Decided May 4, 2005.

Christopher D. Carusone, Philadelphia, Jerome T. Foerster, Harrisburg, for the Com. of PA, appellant.

Don R. Ickes, appellee pro se.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

The Commonwealth appeals from a Commonwealth Court order holding § 904 of the Pennsylvania Game Code, 34 Pa.C.S. § 904, unconstitutional under the Fourth Amendment of the United States Constitution.[1] We affirm.

On April 2, 1999, two Pennsylvania Game Commission Officers entered the property of Don Ickes, appellee, to question him about a possible violation of Pennsylvania game laws that occurred four months earlier.[2] The Game Officers approached Ickes in a cornfield where he was building a fence and asked him to produce identification; they refused to tell him what they were investigating until he complied. Ickes refused to identify himself. When he left the field and went to his home, the officers followed. Ickes briefly went inside his home, then reemerged carrying a video camera. The officers continued to

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

2. The Game Officers were investigating a purported violation of 34 Pa.C.S. § 2302, which prohibits interfering with the lawful taking of wildlife. Someone alleged Ickes had flown an airplane over the area where hunting was underway for an hour and a half.

ask for identification and Ickes continued to refuse, stating his lawyer advised him not to speak with them. The officers issued Ickes a citation for violating 34 Pa.C.S. § 904, which requires a person to produce identification upon demand of a Game Officer. Ickes, who possessed neither a hunting nor trapping license, was later cleared of the underlying charge that the Game Officers were investigating.

Ickes challenged the citation before the local district justice and lost; he was fined $800, plus costs. He challenged the constitutionality of § 904 in the court of common pleas and lost there as well. Ickes next appealed to the Commonwealth Court, which held § 904 unconstitutional. The Commonwealth appealed, and this Court framed the issues as follows:

> Where a statute provides that it is unlawful for any person to refuse to produce identification upon request of a game officer in performance of any duty required by the Game Code, is the statute unlawful on its face in violation of the Fourth Amendment of the United States Constitution because the statute does not require that the game officer have reasonable suspicion?

> Do the circumstances prevailing in the setting of game and wildlife regulation warrant a lower constitutional threshold to support investigatory activity on the part of game officers, and, in particular, the activity authorized by 34 Pa.C.S. § 904, than would otherwise pertain to more general police investigative activity? [3]

*Commonwealth v. Ickes*, 577 Pa. 252, 844 A.2d 1215 (2004).

■ In 1989, the Court of Common Pleas of Union County found § 904 untenable, capturing the problem succinctly:

**3.** At the time Ickes was charged with violating § 904, it read as follows:

> When an officer is in the performance of any duty required by this title, it is unlawful for any person to resist or interfere in any manner or to any degree or to refuse to produce identification upon request of the officer. A violation of this section is a summary offense of the first degree.

> 34 Pa.C.S. § 904.

> Subsequent to the Commonwealth Court's decision, the legislature amended § 904. It now reads:

Read literally, section 904 authorizes game commission officers to stop any citizen, anywhere, at any time, engaged in any activity, whether legal or illegal, demand identification and charge him with commission of a summary offense if compliance is not forthcoming. By failing to prescribe with clarity under what circumstances an individual may be stopped and asked to produce identification or what a detainee must do to comply, section 904 vests game commission officers with unbridled discretion to interrogate whomever they choose under any circumstances they choose and leaves to their sole discretion whether or not the compliance is adequate.

*Commonwealth v. Stahl,* 4 Pa. D. & C.4th 321, 330 (Com.Pl.Union Co.1989). That decision was not appealed. The Union County Court rightly stated the language of § 904 was exceptionally broad, purporting to give Pennsylvania Game Officers powers that no other law enforcement officials possess, including the ability to demand identification from any person without regard for a standard of suspicion. While this Court recognizes the Commonwealth should provide law enforcement with every legal tool necessary to accomplish its mission, in this circumstance, the statute is indeed overly broad.

The Fourth Amendment does not prohibit a state from passing a law requiring the subject of an investigative detention to identify himself. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, et al.,* 542 U.S. 177, 124

(a) General Offense. When an officer is in the performance of any duty required by this title, it is unlawful for any person to interfere with or resist an arrest, inspection or investigation of the officer by threat, force, menace, flight or obstruction. A violation of this subsection is a summary offense of the first degree. (b) Failure to produce identification upon demand. (1) A person who refuses to provide identification upon demand of an officer whose duty it is to enforce this title after having been told by the officer that the person is the subject of an official investigation commits a summary offense of the fifth degree. (2) A person who provides false identification to an officer whose duty it is to enforce this title for the purpose of avoiding prosecution or hindering apprehension or obstructing an investigation commits a summary offense of the second degree. 34 Pa.C.S. § 904.

S.Ct. 2451, 159 L.Ed.2d 292 (2004). In *Hiibel,* the United States Supreme Court held a state may enact a statute requiring persons detained within the confines of a *Terry*[4] stop to identify themselves. "The principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop." *Hiibel,* at 2459. However, the court must first find that there was an actual *Terry* stop. *Hiibel* involved reasonable suspicion of contemporaneous criminal conduct: "[h]ere there is no question that the initial stop was based on reasonable suspicion...." *Id.,* at 2457.

■ As the Commonwealth Court noted, there was no *Terry* stop here. *Commonwealth v. Ickes,* 798 A.2d 863, 865 (Pa.Cmwlth.2002). The Game Officers did not have any reasonable suspicion that Ickes was involved in contemporaneous criminal conduct. "*Terry* stops ... are designed to address immediate suspicions of current illegal conduct." *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 229 (1996). If police wish to initiate an investigative detention, there must be reasonable suspicion that "criminal activity is afoot...." *Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336, 340 (1998). A *Terry* stop is a "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat...." *Terry,* at 20, 88 S.Ct. 1868.

Here, there was no crime in progress or reasonable suspicion of criminal activity afoot. There was no evidence of contemporaneous criminal conduct, nor evidence of any possessory crime. The Game Officers were simply investigating a four-month-old complaint. Ickes was never detained by the Game Officers; he walked away from the encounter. He left the officers, went inside his home, and then voluntarily emerged to continue the discussion. As the Game Officers never detained him, the request for identity did not occur during a *Terry* stop.

■ Outside of a legitimate stop, police retain the right to ask people to identify themselves; if a mere encounter, however, people retain the right not to do so. "The Fourth Amend-

4. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

ment does not proscribe all contact between the police and citizens. . . ." *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). However, if one has the right to completely walk away, one has, *a fortiori*, the right to decline to answer questions. Refusing to provide the requested information is not criminal conduct. Section 904's language thus criminalizes this lawful behavior, and would unlawfully force one to produce identification.

The Commonwealth contends if a law may be valid under any possible circumstance, this Court may not invalidate it, relying on *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), to support its argument. In *Salerno*, respondents, who had been charged with racketeering activity, challenged the Bail Reform Act of 1984 requiring courts to detain arrestees charged with certain serious felonies prior to trial. *Id.*, at 739, 107 S.Ct. 2095. The Court stated, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.*, at 745, 107 S.Ct. 2095. The *Salerno* test, however, is based on *dicta* and is not controlling for state courts. *City of Chicago v. Morales*, 527 U.S. 41, 55, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). "To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court . . . [w]e need not, however, resolve the viability of *Salerno's* dictum, because this case comes to us from a state—not a federal—court." *Id.*, at n. 22.

▪ This Court may invalidate a statute for vagueness or for overbreadth even if it is possible the statute may be applied lawfully in some circumstances. *Id.*, at 52, 119 S.Ct. 1849. ["t]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Id.*, (internal citations omitted.) "In a facial challenge to the overbreadth and vagueness of a law, a court's first

task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). "[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *City of Houston v. Hill,* 482 U.S. 451, 465, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Therefore, even though the powers enumerated in § 904 may not be unconstitutional during a *Terry* stop, this Court may still invalidate the law for being overly broad.

Here § 904's impermissible applications are substantial, as it purports to give Game Officers the power to demand identification without reason, so long as the officer is "in the performance of any duty." 34 Pa.C.S. § 904. This power clearly reaches a substantial amount of protected conduct as it infringes upon a citizens right to be free from demands from law enforcement officials who have no articulable suspicion of wrongdoing by the citizen whatsoever.

 The Commonwealth further argues that hunting is a closely regulated business or industry; thus, all people coming in contact with a Game Officer should have reduced Fourth Amendment protections from searches.[5] However, even if hunting were a closely regulated industry in Pennsylvania, Ickes was not a hunter—he was building a fence. He had no hunting license. The Commonwealth articulates no clear reason why anyone outside the regulated industry, like Ickes, should be subject to laws such as § 904.

The Commonwealth offers an analogy that compares § 904 to § 6308(a) of the Pennsylvania Vehicle Code, which requires

---

**5.** The Commonwealth cites cases from other states showing that hunting may be considered a pervasively regulated industry. *See, e.g., Elzey v. State,* 239 Ga.App. 47, 519 S.E.2d 751 (1999) (Wildlife Officers' actions in randomly checking hunters' licenses were reasonable); *People v. Perez,* 51 Cal.App.4th 1168, 59 Cal.Rptr.2d 596 (1996); *People v. Layton,* 196 Ill.App.3d 78, 142 Ill.Dec. 539, 552 N.E.2d 1280 (1990). The Commonwealth, however, fails to articulate why a statute should be so vague as to apply to all people that a Game Officer meets, rather than just hunters.

drivers to produce identification when stopped for traffic violations. The analogy is flawed; if anything, it supports a holding that § 904 should require at least a level of reasonable suspicion to be constitutionally valid. "The operator of any vehicle ... *reasonably believed to have violated any provision of this title* ... shall, upon request, exhibit a registration card, [and] driver's license...." 75 Pa.C.S. § 6308(a) (emphasis added). Although hunting is well regulated, it does not compare to the breadth and volume of law and regulation for vehicle operations. Yet, even in that heavily regulated realm, law enforcement officers must be able to articulate a level of suspicion prior to initiating a stop and asking for identification. Section 904, as written at the time of Ickes' confrontation with state Game Officers, lacked the need for any such suspicion.

Invalidating § 904 will have no effect on the ability of Game Officers to effectively police the activities of hunters. Game Officers must simply adhere to the minimum standards applicable to all law enforcement officers. In *Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983), the Superior Court reinforced the notion that Game Officers have the same responsibilities as other police, but not more. There the court held Game Officers may stop a vehicle, but only upon reasonable suspicion, and search it, but only with probable cause. *Id.*, at 249. Furthermore, the court held the Game Officers in that case should have administered *Miranda*[6] warnings as any other law enforcement officers would be required to do in a custodial interrogation. *Id.* None of these threshold requirements are enumerated in the statute that authorizes Game Officers to stop and search, but they are required if officers are to avoid constitutional impropriety. *Palm* has not unduly burdened Game Officers in performing their duties, and effective enforcement of Pennsylvania's game laws will go on following our ruling herein.

Section 904 as it was written gave Pennsylvania Game Officers the statutory power to stop any person at any time and demand identification without a standard of suspicion;

6. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

clearly, it was too broad to withstand constitutional scrutiny. Section 904's overbroad language was such that it applied to any person, rather than those suspected of violating the law, which allows for arbitrary enforcement. The evils addressed by § 904 do not warrant a constitutional threshold lower than would pertain to other police activity.

The order of the Commonwealth Court is affirmed. Jurisdiction relinquished.

Chief Justice CAPPY and Justice SAYLOR concur in the result.