Lawrence CREWS, by his mother and natural guardian, Lynette Crews, and Lynette Crews, in her own right, Appellants

v.

CITY OF CHESTER and Officer John Kuryan.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Jan. 25, 2012.

Jon Auritt, Media, for appellants.

Mark A. Raith, Media, for appellee City of Chester.

BEFORE: PELLEGRINI, Judge [1], and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Lawrence Crews (Crews) and his mother, Lynette Crews (together, Plaintiffs), appeal from the October 21, 2010, orders of the Court of Common Pleas of Delaware County (trial court), denying their motion for summary judgment, dismissing their complaint against the City of Chester (City) with prejudice, and entering summary judgment in the City's favor. We affirm in part and reverse in part.

On the evening of August 29, 2001, then-fifteen-year-old Crews was standing at the corner of Tenth and Potter Streets in the City talking with three other males. When police approached the area on bicycles, someone yelled "5–0," and Crews and the other individuals dispersed and ran. Officer John Kuryan apprehended Crews and charged him with loitering in a high drug activity area in violation of City Ordinance Number 7–1990 (Ordinance),[2] which states:

771.01 POSTING HIGH DRUG ACTIVITY AREA.

(a) The Mayor is hereby empowered to designate any area in the City in which twenty-five (25) arrests have been made in a six (6) month period relating to drugs, as a "High Drug Activity Area".

(b) The Mayor may order the posting of signs in such an area giving warnings to travelers, thereon, that such an area is a "High Drug Activity Area".

(Ord. 7–1990 § 1, 2. Passed 8–15–90.)

711.02 VIOLATION.

It shall be unlawful for any person/persons who has been observed either standing, sitting or otherwise loitering for over thirty minutes in a high drug activity area and after questioning by police, could not give a lawful and reasonable explanation for his presence there, to remain or return after being requested to leave by a police officer.

(Ord. 7–1990 § 3. Passed 8–15–90.)

711.99 PENALTY.

Any person who violates any provision of this article shall be fined not more than six hundred dollars ($600.00) and, in default of payment thereof, shall be imprisoned not more than ninety days.

(Ord. 7–1990 § 4. Passed 8–15–90.)

Crews was arrested, handcuffed, and transported to the police station, where he was held in police custody for approximately one hour until his mother arrived.

At a summary hearing in November 2001, a district justice dismissed Crews' citation because both the prosecutor and Officer Kuryan failed to appear.[3]

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. In the citation, Officer Kuryan described the offense as follows: "Def[endant] was loitering with a group of about 8–10 people in a posted high drug activity area. A [black male] yelled

'50[.]' Def[endant] then ran from area." (8/29/01 Non–Traffic Citation/Summons; R.R. at 2a.)

3. Crews was arrested a second time for violating the Ordinance in June 2005. That cita-

On June 23, 2003, Plaintiffs filed a complaint against the City and Officer Kuryan[4] in connection with Crews' August 2001 arrest. In their complaint, Plaintiffs challenged the Ordinance's constitutionality and sought declaratory and injunctive relief, as well as damages for personal injuries and emotional distress suffered by Crews. Plaintiffs also sought damages for medical and legal expenses incurred by Crews' mother. The City filed an answer and new matter. Following brief discovery, both Plaintiffs and the City filed motions for summary judgment. The trial court initially dismissed the complaint on the ground that Plaintiffs lacked standing to pursue their claims. Plaintiffs timely appealed.

On appeal, this court held that Plaintiffs had standing to challenge the Ordinance because:

> [a]lthough the citation was dismissed, such does not change the fact that Crews was adversely affected by the Ordinance, in that he was taken into custody and issued a citation for violation of the Ordinance and retained counsel to defend the subsequently dismissed citation.

*Crews v. City of Chester,* 983 A.2d 829, 833 (Pa.Cmwlth.2009). However, we concluded that a remand was necessary for the trial court to make factual determinations, if needed, with regard to Plaintiffs' constitutional claims. *Id.* Therefore, we re-

versed and remanded for further proceedings.

On remand, the trial court denied Plaintiffs' summary judgment motion, granted the City's summary judgment motion, and dismissed Plaintiffs' complaint with prejudice. In its opinion, the trial court concluded that: (1) Crews' First Amendment rights were not violated; (2) the Ordinance is neither vague nor overbroad; (3) Plaintiffs were not entitled to damages for Crews' injuries because the City has sovereign immunity; (4) Plaintiffs' emotional distress claim was unsupported by the evidence; (5) Crews' civil rights were not violated under 42 U.S.C. § 1983; and (6) Plaintiffs were not entitled to recover legal or medical expenses. Plaintiffs timely appealed from that decision.[5]

### 1. Overbreadth[6]

■■■■　Plaintiffs first argue that the Ordinance is unconstitutionally overbroad because it criminalizes "standing, sitting or otherwise loitering" in a designated high drug activity area for more than thirty minutes, which is lawful conduct. We disagree.

■■■■　A municipal ordinance is overbroad if, by its reach, it punishes constitutionally protected conduct as well as illegal conduct. *Commonwealth v. Asamoah,* 809 A.2d 943, 946 (Pa.Super.2002). An anti-loitering ordinance may be deemed overbroad "if the impermissible applications of the [ordinance] are substantial when

---

tion was also dismissed. (*See* 1/25/07 Magisterial District Judge Decision; R.R. at 3a.)

**4.** Plaintiffs voluntarily dismissed Officer Kuryan from the case in 2008.

**5.** When reviewing an order granting summary judgment, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Dwight v. Girard Medical Center,* 154 Pa.Cmwlth. 326, 623 A.2d 913, 915 (1993).

**6.** "Ordinances are presumed to be constitutional, and a heavy burden is placed on a person who challenges the constitutionality of an ordinance." *Commonwealth v. Asamoah,* 809 A.2d 943, 945 (Pa.Super.2002). If the wording of an enactment supports a construction that would render it constitutional, that construction must be adopted. *Commonwealth v. McCool,* 386 Pa.Super. 618, 563 A.2d 901, 902–03 (1989).

judged in relation to [its] plainly legitimate sweep." *Id.* In a facial overbreadth challenge, our first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct; if not, the overbreadth challenge must fail. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ Contrary to Plaintiffs' assertion, the Ordinance here does not punish a person merely for loitering in a designated high drug area for more than thirty minutes. Rather, it allows the person to offer a lawful and reasonable explanation for his or her presence in such an area if requested by a police officer. Only if the person cannot provide a lawful explanation will he or she be asked to leave and potentially face criminal sanctions. As the trial court explained:

> In order to restrain the sale of illegal drugs in that area[,] [the City] has enacted an ordinance which at worst may cause some inconvenience to persons found loitering there. If, upon request, they can give a lawful and reasonable explanation for their presence in that area, they can remain. If not, they are not arrested but simply asked to leave. This court does not believe that the ordinance has a sufficiently substantial impact on conduct protected by the First Amendment to render it unconstitutional.

> . . .

> . . . The [C]ity has a duty to control and protect its citizens from illegal drug trafficking and that is the purpose of this ordinance.

(Trial Ct. Op., 12/10/10, at 3–4.) [7]

We agree with the trial court that any impermissible application of the Ordinance is insubstantial when judged in relation to the Ordinance's legitimate purpose of controlling illegal drug trafficking. Therefore, the Ordinance is not facially overbroad.

### 2. Vagueness

■ Next, Plaintiffs assert that the Ordinance is unconstitutionally vague. A municipal ordinance is void for vagueness if it fails to give a person of ordinary intelligence fair notice of what conduct is prohibited. *Asamoah,* 809 A.2d at 946. A criminal ordinance "must define the . . . offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.*

■ Plaintiffs claim that there was no sign identifying the corner of Tenth and

---

7. The facts of this case are distinguishable from *Sawyer v. Sandstrom,* 615 F.2d 311 (5th Cir.1980), in which the United States Court of Appeals for the Fifth Circuit declared an anti-loitering ordinance unconstitutionally overbroad. The ordinance in *Sawyer* made it a crime to knowingly loiter with one or more persons knowing that such persons were using or possessing narcotics. *Id.* at 314. Notwithstanding the ordinance's legitimate purpose of curbing drug trafficking, the Fifth Circuit found that the ordinance criminalized a person's mere association with individuals who are using or selling drugs, even if he had no intent of using or selling drugs himself. In other words, it "rendered appellant's mere associational conduct criminal, based solely upon the suspected criminality of those with whom he publicly associated." *Id.* at 317. Unlike the ordinance in *Sawyer,* the language of the instant ordinance does not include loitering for innocent purposes within its sweep. Before the police can order dispersal, the loiterer has the opportunity to provide a lawful and reasonable explanation for being in a high drug area. Upon proper application of the ordinance, if a person is loitering for innocent purposes, he or she can remain and will not face criminal sanctions.

Potter Streets as a high drug activity area, so Crews had no notice of the ordinance or his potential violation. However, the issue of fair notice "has been determined by the United States Supreme Court as being limited to whether it can be ascertained *from the ordinance* what conduct constitutes a violation of that ordinance, not whether the plaintiff knew that the [o]rdinance existed." *Waters v. McGuriman,* 656 F.Supp. 923, 927 (E.D.Pa.1987) (*citing Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)) (emphasis added). Here, the language of the ordinance states that failure to obey a police dispersal order is a violation for which criminal sanctions may be imposed. Plaintiffs have offered no evidence to support a conclusion that a person of reasonable intelligence could not understand, by reading the terms of the Ordinance, what conduct constitutes a violation.

Next, Plaintiffs claim that the Ordinance is vague because it invites arbitrary and discriminatory enforcement. According to Plaintiffs, there is no way of knowing what criteria a police officer will use to determine whether a person's explanation for his or her presence is "lawful and reasonable." The ordinance also does not specify what a person must do to comply with a police dispersal order. We agree with these contentions.

In *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the United States Supreme Court recognized that the more important aspect of the vagueness doctrine is not actual notice, but the requirement that the legislature establish minimal guidelines for enforcement of the enactment. For example, the California statute at issue in *Kolender* required persons who loitered or wandered on the public streets to provide "credible and reliable" identification when requested by a police officer. The Supreme Court

held that the statute was unconstitutionally vague because it failed to clarify what was contemplated by the requirement of "credible and reliable" identification and, thus, afforded too much discretion to police.

> It is clear that the full discretion accorded to the police to determine whether the suspect has provided a "credible and reliable" identification necessarily "entrust[s] lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" [The law] "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,'" and "confers on police a virtually unrestrained power to arrest and charge persons with a violation."...
>
> ... [The law], as presently construed, requires that "suspicious" persons satisfy some undefined identification requirement, or face criminal punishment.

*Id.* at 360–61, 103 S.Ct. 1855 (citations omitted). Thus, the *Kolender* Court concluded that the statute was vague because it "fail[ed] to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Id.* at 361, 103 S.Ct. 1855.

Plaintiffs rely on *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), in which a plurality of the United States Supreme Court held that an anti-loitering ordinance was unconstitutionally vague. The ordinance required a police officer, upon observing a person whom the officer reasonably believed was a street gang member loitering in a public place with one or more other persons, to order such persons to disperse; failure to obey the dispersal order was a violation for which criminal sanctions would be imposed. The Supreme Court concluded that the ordinance was unconsti-

tutionally vague because it failed to provide fair notice of the prohibited conduct and failed to establish minimal guidelines for its enforcement. *Id.* at 58–64, 119 S.Ct. 1849. In reaching this conclusion, the *Morales* Court noted that "the ordinance does not provide sufficiently specific limits on the enforcement discretion of the police 'to meet constitutional standards for definiteness and clarity.'" *Id.* at 64, 119 S.Ct. 1849 (citation omitted).

Similarly, the Pennsylvania Superior Court invalidated a municipal anti-loitering ordinance on vagueness grounds in *Asamoah.* The *Asamoah* ordinance prohibited persons from loitering in any public or private place in a manner that, *inter alia,* "demonstrate[d] an intent or desire ... to engage in a drug transaction." 809 A.2d at 946–47. The ordinance, however, provided no guidance as to what constituted an act demonstrating an intent or desire to enter into a drug transaction, thereby giving a police officer unfettered discretion to order any person to "move on or disperse" as the officer pleased. *Id.* at 948. As such, the ordinance "impermissibly delegate[d] basic policy matters to police officers for resolution on an *ad hoc* and sub-

jective basis." *Id.* The Superior Court also determined that the ordinance was unconstitutionally vague because it provided no guidance as to what a person must do to comply with a dispersal order.

> [B]ecause the ordinance does not place the accused on notice as to how far he must "disperse" and for how long he must remain away from the site he was ordered to leave, the ordinance is unclear in its description of the loiterer's duty to obey the dispersal order.

*Id.*[8]

■ Here, the Ordinance offers no guidance as to what constitutes "a lawful and reasonable explanation" for a person's presence in a high drug activity area. Nor does it specify what a person must do to comply with a police dispersal order. Like the anti-loitering ordinance struck down in *Morales,* the Ordinance here "affords too much discretion to the police and too little notice to citizens who wish to use the public streets." 527 U.S. at 64, 119 S.Ct. 1849.[9]

Accordingly, because we conclude that the Ordinance is impermissibly vague, we

---

8. Several federal district courts have struck down similar anti-loitering/dispersal ordinances on vagueness grounds. *See, e.g., NAACP Anne Arundel County Branch v. City of Annapolis,* 133 F.Supp.2d 795, 809 (D.Md. 2001) ("The ordinance does not specify to where a person who has been so ordered [to disperse] must move or for how long he must remain at that place. It, therefore, may allow a police officer too much discretion by permitting her to require different people to move on to different places or for different amounts of time."); *Derby v. Town of Hartford,* 599 F.Supp. 130, 136 (D.Vt.1984) ("Unguided discretion is entrusted to enforcing officers to decide whether a person is engaged in criminal conduct under the ordinance. Such discretion necessarily invites arbitrary and discriminatory treatment that cuts across established due process precepts.").

9. Indeed, the instant Ordinance suffers from the same inadequacies as the ordinance in *Morales,* which the Supreme Court explained as follows:

> [The ordinance] provides that the officer "shall order all such persons to disperse and remove themselves from the area." ... This vague phrasing raises a host of questions. After such an order issues, how long must the loiterers remain apart? How far must they move? If each loiterer walks around the block and they meet again at the same location, are they subject to arrest or merely to being ordered to disperse again? As we do here, we have found vagueness in a criminal statute exacerbated by the use of the standards of "neighborhood" and "locality."

527 U.S. at 59, 119 S.Ct. 1849 (citations omitted).

reverse the entry of summary judgment in the City's favor on this issue.

### 3. Fourth Amendment Violation[10]

Plaintiffs argue that the Ordinance, as applied, violated Crews' Fourth Amendment right to be free from unreasonable seizures because he was arrested without probable cause. We agree.[11]

▬▬▬ A police officer who has reasonable suspicion that criminal activity is afoot may conduct an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which subjects a person to a brief period of detention for limited questioning. If an arrest or custodial detention occurs, however, it must be supported by probable cause. *Commonwealth v. Hayward,* 756 A.2d 23, 27 (Pa.Super.2000). "Probable cause" exists when the facts and circumstances within a police officer's knowledge are sufficient to support a prudent person's belief that the suspect has committed or is about to commit a crime. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

In *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court invalidated a Texas statute that subjected a pedestrian to detention and questioning by police merely because he or she was in a high crime area. In concluding that the statute violated the Fourth Amendment, the Supreme Court stated:

The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. *But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.* When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.

*Id.* at 52, 99 S.Ct. 2637 (emphasis added).

▬▬▬ The City argues that, although Officer Kuryan did not first inquire about Crews' purpose for being in a high drug area, Crews' flight upon seeing the police indicated that he did not have a lawful and reasonable explanation for his presence, thereby justifying his arrest. However, that is not the law. Crews' unprovoked flight from a high crime area would have given Officer Kuryan, at most, reasonable suspicion to stop and detain him for brief questioning to determine whether he was engaged in criminal activity. *See Commonwealth v. Brown,* 904 A.2d 925, 930 (Pa.Super.2006) ("[U]nprovoked flight in a high crime area establish[es] a reasonable suspicion to believe that criminal activity is afoot to allow for a *Terry* [investigatory] stop."). An arrest must be supported by probable cause. Here, the City has produced no evidence to establish that Officer

---

**10.** The City asserts that the only count in Plaintiffs' complaint relating to the Fourth Amendment is count III, which is a civil rights claim under 42 U.S.C. § 1983, and that Plaintiffs abandoned that claim when they dismissed Officer Kuryan from the case. However, this assertion is incorrect, as Plaintiffs also raised a Fourth Amendment claim in count I, in which they named the City as a defendant. (*See* Complaint, ¶¶ 15, 17.)

**11.** We recognize that the trial court did not specifically address Plaintiffs' Fourth Amendment claim in its opinion. However, in its discussion of Plaintiffs' claim under 42 U.S.C. § 1983 that Crews' arrest was unsupported by probable cause, the trial court determined that "Crews' sudden, unprovoked flight in a high crime area provided Officer Kuryan with reasonable suspicion to stop Crews and issue the citation." (Trial Ct. Op., 12/10/10, at 5.)

Kuryan had probable cause, based on articulable facts, to believe that Crews committed or was about to commit a crime.

 We find it significant that the only crime with which Crews was charged was loitering in a high drug activity area in violation of the Ordinance. (*See* 8/29/01 Non–Traffic Citation/Summons; R.R. at 2a.) Thus, the record demonstrates that the City has applied the Ordinance in such a manner as to make *fleeing* from a high drug activity area, without more, a crime. An ordinance that allows a police officer to arrest citizens based on nothing more than a mere suspicion of criminal activity cannot withstand Fourth Amendment scrutiny. *See, e.g., Kolender,* 461 U.S. at 363, 103 S.Ct. 1855 (Brennan, J., concurring) ("Where probable cause is lacking, we have expressly declined to allow significantly more intrusive detentions or searches on the *Terry* rationale, despite the assertion of compelling law enforcement interests."); *Asamoah,* 809 A.2d at 948 ("In our constitutional system, the police may only seize and detain or arrest a person if probable cause exists to believe he has committed a crime, or if reasonable suspicion based on articulable facts exists

to warrant an investigatory stop under *Terry v. Ohio....*"); *Waters,* 656 F.Supp. at 928–29 (noting, in *dicta,* that the ordinance at issue "permit[ted] detention and arrest on suspicions that would not pass scrutiny under the standards required by the Fourth Amendment").[12]

Accordingly, because we conclude that the City applied the Ordinance in a manner that violated Crews' Fourth Amendment rights, we reverse the entry of summary judgment in the City's favor on this issue.

### 4. Damages

 Plaintiffs argue that they are entitled to damages for emotional distress suffered by Crews and for legal expenses incurred by Crews' mother because the City violated Crews' civil rights under 42 U.S.C. § 1983.[13] (Plaintiffs' Brief at 20–21.) However, in count III of the complaint, the only count alleging a section 1983 violation, Plaintiffs named only Officer Kuryan as a defendant. (*See* Complaint, ¶¶ 25–26.) Therefore, because Officer Kuryan has been dismissed from the case, Plaintiffs have abandoned their damages claims relating to section 1983.[14]

---

**12.** In fact, the trial court itself noted that, "*upon proper application of the law,* the arrest would not occur until after the police inquired as to the citizen's purpose in being in the [high drug activity] area and then giving an order to leave the area which is either ignored or disobeyed." (Trial Ct. Op., 12/20/20, at 3 (emphasis added).) However, by arresting Crews without inquiring as to his purpose for being in a high drug area, Officer Kuryan did not properly apply the terms of the Ordinance.

**13.** Plaintiffs concede that they have abandoned the remainder of their damages claims. (Plaintiffs' Brief at 7.)

**14.** Plaintiffs also argue that, to the extent that our court's prior decision can be construed as limiting Plaintiffs' standing to their individual claims for damages, we should find that

Plaintiffs also have standing to pursue their claims for declaratory and injunctive relief. However, it is evident from our prior decision that we determined that Plaintiffs had standing to pursue all of their claims. In reversing and remanding to the trial court, we explained:

> Having concluded that Crews does have standing, we also determine that a remand to the trial court is appropriate. Because the trial court determined that Crews did not have standing, the trial court did not address the constitutional issues raised by Crews. Inasmuch as factual determinations may need to be made, we remand the matter to the trial court for further proceedings.

*Crews,* 983 A.2d at 833.

## ORDER

AND NOW, this 25th day of January, 2012, we hereby reverse the October 21, 2010, orders of the Court of Common Pleas of Delaware County to the extent that they entered summary judgment in favor of the City of Chester on the vagueness and Fourth Amendment claims. Summary judgment shall be entered in favor of Lawrence Crews and his mother, Lynette Crews, as to those claims only. We affirm the orders in all other respects. We also deny any outstanding motions regarding excessive reproduction of the record.

## CONCURRING AND DISSENTING OPINION BY Judge McCULLOUGH.

While I concur with the Majority insofar as it reverses the October 21, 2010, orders of the Court of Common Pleas of Delaware County (trial court) entering summary judgment in favor of the City of Chester (City) on the vagueness and Fourth Amendment claims and instead enters summary judgment in favor of Lawrence Crews and his mother, Lynette Crews, as to these claims, I respectfully dissent insofar as the Majority fails to take similar action with respect to the Crews' overbreadth claim.

Section 711.02 of City Ordinance Number 7–1990 (Ordinance) provides as follows:

> It shall be unlawful for any person/persons who has been observed either standing, sitting or otherwise loitering for over thirty minutes in a high drug activity area and after questioning by police, could not give a lawful and reasonable explanation for his presence there, to remain or return after being requested to leave by a police officer.

(Ord. 7–1990 § 3; Passed 8–15–90.)

An ordinance or statute is declared to be overbroad when the expansive sweep of its enforcement criminalizes otherwise lawful and constitutionally protected conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).[1] As our United States Supreme Court explained in *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), "the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.' "[2] 527 U.S. at 52, 119 S.Ct. 1849 (quoting *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908). Our

---

1. In *Broadrick*, the Court declared as constitutional a statute which prohibited Oklahoma state employees from directly or indirectly soliciting contributions for any political organization, candidacy or other political purpose and from being an officer or member of any national, state, or local committee of a political party or a candidate for paid public office. The Court refused to declare the statute as overbroad, stressing that the statute prohibited a limited amount of conduct, which the state had the power to proscribe, and that any overbreadth that may exist should be "cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." 413 U.S. at 615–16, 93 S.Ct. 2908.

2. In *Morales*, the Court declared as unconstitutionally vague a "gang congregation" ordinance which prohibited loitering together in any public place by two or more people, of whom at least one was a criminal street gang member. The Court held that the ordinance failed to establish minimal guidelines to govern law enforcement, required no harmful purpose, applied to non-gang members as well as suspected gang members, insufficiently limited the discretion granted to the police in enforcing the ordinance, and failed to provide sufficient notice to citizens who wished to use the public streets. While discussing the overbreadth doctrine, the Court declined to rely on this doctrine in reaching its decision.

Pennsylvania Supreme Court has described a statute as unconstitutionally overbroad when it "reaches a substantial amount of protected conduct as it infringes upon a citizen's right to be free from demands from law enforcement officials who have no articulable suspicion of wrongdoing by the citizen whatsoever." *Commonwealth v. Ickes,* 582 Pa. 561, 568, 873 A.2d 698, 702 (2005) (declaring as unconstitutionally overbroad a statute that required a person to produce identification upon demand by a Pennsylvania game officer performing any of his duties under the Pennsylvania Game and Wildlife Code, 34 Pa.C.S. §§ 101–2965).

The Majority concludes that the Ordinance is not unconstitutionally overbroad because it allows a person to offer a lawful and reasonable explanation for his or her presence in a high drug activity area if requested by a police officer and this questioning is insubstantial when judged in relation to the Ordinance's legitimate purpose of controlling illegal drug trafficking. I cannot agree that the ability to offer a "lawful and reasonable explanation" overcomes the overbroad nature of this Ordinance. Indeed, the Majority later concludes that this very same language is unconstitutionally vague because it offers no guidance as to what constitutes a "lawful and reasonable explanation."

Moreover, while the Majority does not agree, the Ordinance does essentially criminalize lawful and constitutionally protected conduct, i.e., standing or sitting in a designated area for a period in excess of 30 minutes. Furthermore, similar to the statute in *Ickes,* the Ordinance in this case "reaches a substantial amount of protected conduct" and "infringes upon a citizen's right to be free from demands from law enforcement officials who have no articulable suspicion of wrongdoing by the citizen

whatsoever." *Ickes,* 582 Pa. at 568, 873 A.2d at 702.

For these reasons, I would also reverse the trial court's orders to the extent that they entered summary judgment in favor of the City as to the Crews' overbreadth claim.