**COMMONWEALTH of Pennsylvania**

v.

**Kenneth D. THOMPSON, Sr., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 10, 2014.

Decided March 12, 2015.

---

**10.** The Union did not participate in negotiations over the secondary employment rate of pay.

Keith E. Kendall, Harrisburg, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Following a trial *de novo* in the Berks County Court of Common Pleas (Trial Court), Kenneth D. Thompson, Sr. (Appellant), was convicted of a summary offense for violating Bethel Township Local Ordinance (Ordinance) 1997–4 § 3.C "Disturbing the Peace Involving Conduct Towards a Police Officer." Appellant brings this appeal from the judgment of sentence entered by the Trial Court on

March 20, 2014.[1] For the reasons that follow, we affirm.[2]

"Disturbing the Peace Involving Conduct Towards a Police Officer" is defined in Subsection C of the Ordinance as "interfering willfully with, resisting, delaying, obstructing, molesting, or threatening to molest by any person a police officer in the exercise of his/her official duties." Ordinance 1197–4 § 3.C. Before the Trial Court, Appellant, Appellant's neighbor, Richard Eugene Powell, Appellant's grandson, Justin Thompson, and Bethel Township Police Officer Rhiannon Trate each testified concerning events that transpired on June 30, 2013. (March 20, 2014 Hearing Transcript (H.T.) at 4, 8, 16, 21, Reproduced Record (R.R.) at 5a, 6a, 8a, 10a.) Based on the testimony offered by these witnesses, the Trial Court made the following findings of fact:

> Appellant knew she was a police officer, as he told his grandson, with whom he was on the phone at the time this happened. (Notes of Testimony, 3/20/2014, at 17–18). He was told and thus he knew that the police officer was there to investigate a report about an issue with the neighbor. (*Id.* at 11). The officer was in full uniform in a marked patrol vehicle. *Id.* at 9. When the officer knocked on Appellant's door and indicated that she needed to speak to him about the dispute, he replied, "I have a shotgun and it's loaded with buckshot." (*Id.*, at 12, 15). Then, when he refused to permit her to enter and she asked him to come outside instead, he threatened, "If you don't get off my property, I'm coming out with my shotgun." (*Id.*).

(Trial Court Opinion at 4, R.R. at 20a.) Based on these findings of fact, the Trial Court concluded that Appellant's statement was "made to trouble or harm the officer by threatening to cause serious, potentially fatal injury to a police officer who was trying to perform her duty to investigate a report." (*Id.*) The Trial Court also concluded that the Ordinance provided Appellant with fair notice that his conduct was prohibited and that the Ordinance was therefore not unconstitutionally vague. (*Id.*)

Before this Court, Appellant argues that the Trial Court erred in concluding that the Ordinance passes constitutional muster. Appellant contends that the Ordinance unnecessarily encompasses both lawful and unlawful activity, fails to provide a reasonable standard by which a person can gauge his or her conduct, and encourages arbitrary and discriminatory enforcement. Appellant contends that his refusal to speak with or allow a police officer into his home without a warrant is constitutionally protected conduct and cannot be construed as prohibited conduct.

The Office of the District Attorney for Berks County (Commonwealth) argues that Appellant's conviction should be upheld. The Commonwealth argues that the Ordinance uses everyday language to clearly define the conduct prohibited. The Commonwealth further argues that the conduct for which Appellant was convicted was his specific threat to come outside with his shotgun, rather than any exercise of his constitutional rights under the United States Constitution or the Pennsylvania Constitution.

---

1. This appeal was transferred from the Superior Court on June 6, 2014.

2. Appellant challenges the constitutionality of the Ordinance under which he was convicted. In an appeal challenging the constitutionality of an ordinance, our scope of review is plenary and the ordinance will only be invalidated if it "clearly, palpably, and plainly violates constitutional rights." *Commonwealth v. Noel*, 579 Pa. 546, 857 A.2d 1283, 1285 (2004) (internal quotations omitted).

The police powers allow a township to enact ordinances for the health and welfare of its citizens. *Warren v. City of Philadelphia,* 382 Pa. 380, 115 A.2d 218, 220 (1955). An ordinance is presumptively constitutional; if the constitutionality of an ordinance is challenged a heavy burden is placed upon the party challenging the ordinance. *Commonwealth v. Sterlace,* 24 Pa. Cmwlth. 62, 354 A.2d 27, 29 (1976). An ordinance is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and it encourages arbitrary and discriminatory enforcement; an ordinance passes constitutional muster if its terms, when read in context, are sufficiently specific that they provide reasonable standards by which a person may gauge future conduct. *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996); *Commonwealth v. Asamoah,* 809 A.2d 943, 946 (Pa.Super.2002); *Commonwealth v. Ebaugh,* 783 A.2d 846, 850 (Pa.Cmwlth.2001). A void for vagueness challenge to an ordinance does not require the ordinance "to be tested against paradigms of legislative draftsmanship." *Grayned v. City of Rockford,* 408 U.S. 104, 111, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)

("Condemned to the use of words, we can never expect mathematical certainty from our language."); *Oppenheim v. State Dental Council and Examining Board,* 74 Pa. Cmwlth. 200, 459 A.2d 1308, 1315 (1983). Where a vagueness challenge does not allege that the ordinance infringes First Amendment freedoms, "the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." *Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418, 422 (2003); *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244, 245 (1976); *Oppenheim,* 459 A.2d at 1315. Appellant does not challenge the Ordinance on the grounds that it abridged his First Amendment freedoms.[3] Instead, Appellant roots his argument in the Due Process clauses of the United States Constitution and the Pennsylvania Constitution.[4]

We agree with the Commonwealth that the language used in the Ordinance is common everyday language easily understood by a person of ordinary intelligence. Interfere, resist, delay, obstruct, molest, and threaten are each well-known verbs that denote conduct carried out to make

---

3. A true threat is not protected speech and may be regulated as conduct. *Virginia v. Black,* 538 U.S. 343, 359–360, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

4. Article 1, § 9 of the Pennsylvania Constitution provides that: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life,

liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself." Appellant also relies upon Article 1, § 1, which provides that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness," and Article 1, § 8 of the Pennsylvania Constitution, which provides that "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...."

another's task more difficult. In addition to describing specific conduct, the statute requires that the conduct be willful, that the person who the conduct is directed towards be a police officer, and that the prohibition is limited to instances when a police officer is exercising his or her official duties. The terms of the Ordinance are specific and the Ordinance provides a reasonable standard by which a person can gauge his or her conduct. *Compare Commonwealth v. Noel*, 857 A.2d at 1287 (use of "which by their very nature can have no application" in Section 3103(a) of the Vehicle Code, 75 Pa.C.S. § 3103, to differentiate portions of the vehicle code inapplicable to horses is impermissibly vague definition of prohibited conduct).

Appellant argues that the Ordinance allows for discriminatory and arbitrary enforcement similar to anti-loitering ordinances that have long been found constitutionally deficient. Appellant relies primarily upon *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), where the United States Supreme Court held that a vagrancy ordinance was unconstitutional on its face because it encouraged arbitrary and erratic arrests. The ordinance at issue in *Papachristou* allowed for the arrest, *inter alia*, of "persons neglecting all lawful business and habitually spending their time by frequenting ... places where alcoholic beverages are sold or served," which the Court noted would "literally embrace many members of golf or city clubs." *Id.* at 156 n. 1, 164, 92 S.Ct. 839. The Court determined that the ordinance was constitutionally infirm because it brought innocent behavior within its reach in order to permit authorities a large net with which to round-up people deemed by an unwritten standard to merit arrest when a particular offense could not be charged. The ordinance in *Papachristou* is therefore quite

distinct from the Ordinance at issue here. The Ordinance here defines and prohibits conduct that is highly contextual; the Ordinance applies only to specifically defined behavior, only when directed at police officers, and only when those officers are exercising their official duties. *Compare Crews v. City of Chester*, 35 A.3d 1267, 1273 (Pa.Cmwlth.2012) (ordinance that offers no guidance as to what constitutes "a lawful and reasonable explanation" of a person's presence in a high drug activity area is unconstitutionally vague). Appellant argues that the language of the Ordinance criminalizes the investigative activity of a police officer but the specific text of the Ordinance belies his argument.

 Appellant's conduct falls squarely within the terms of the Ordinance. He did not simply ignore the officer, speak to her in a rude, profane manner, or direct her to leave his property; instead he threatened her with the buckshot loaded in his shotgun. The United States Supreme Court observed in *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 463, 107 S.Ct. 2502. In his argument, Appellant characterizes his actions as mere opposition to police action. Appellant's characterization of his conduct runs counter to the facts found by the Trial Court. The instant matter does not involve dissent or opposition; the Trial Court found that Appellant threatened Officer Trate. Appellant's argument recounts the litany of rights secured to him by the Pennsylvania Constitution and the United States Constitution but neither of these foundational documents affords protection from criminal consequences to per-

sons threatening police officers with harm. *Watts v. United States,* 394 U.S. at 707, 89 S.Ct. 1399; *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943, 944 (1999) (distinguishing impermissible application of disorderly conduct statute to profane language from application to threatening or violent behavior directed at a police officer); *Bala v. Unemployment Compensation Board of Review,* 42 Pa.Cmwlth. 487, 400 A.2d 1359, 1362 n. 4 (1979). The Trial Court found that Appellant knew he was speaking to a police officer and, with that knowledge, made a direct threat of serious harm to that police officer. However broad the Ordinance may be construed in a hypothetical setting, Appellant's conduct here clearly falls within the Ordinance's prohibition against threatening to molest a police officer in the exercise of her duties. Accordingly, the order of the Trial Court is affirmed.

### ORDER

AND NOW, this 12th day of March, 2015, the order of the Berks County Court of Common Pleas in the above-captioned matter is AFFIRMED.