J.A27041/13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
               Appellee   :
  :
           v.   :
  :
  :
MIROSLAV KOVALCIK,   :
  :
           Appellant   :   No. 444 MDA 2013

Appeal from the Order Entered February 12, 2013
In the Court of Common Pleas of Lackawanna County
Criminal Division No(s).: CP-35-SA-0000162-2012
CP-35-SA-0000163-2012

BEFORE: BENDER, P.J., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:       **FILED OCTOBER 06, 2014**

Appellant, Miroslav Kovalcik, appeals *pro se* from the order of the Lackawanna County Court of Common Pleas to pay fines, costs, and fees totaling $738 after a trial *de novo* at which he was found guilty of two summary offenses for junk vehicles. Appellant alleges numerous procedural and substantive irregularities in the prosecution of the summary offenses. We affirm.

On July 11, 2012, the Scranton Department of Licensing, Inspections, and Permits ("L&I") sent Appellant a letter advising him that he was in

---

[*] Former Justice specially assigned to the Superior Court.

violation of land use regulations because he was storing, repairing and disassembling junk vehicles at his residence, which was located in an "R-1" zone. Letter, Zoning Code Enforcement Officer Michael J. Wallace to Appellant, 7/11/12, at 1. The July 11th letter ordered him "to remove the violations within thirty (30) days upon receipt of this order." *Id.*

The following day, July 12, 2012, L&I Housing Inspector John G. Liptai issued a housing inspection notice that Appellant was in violation of Scranton's Property Maintenance Code. *See* Code of City of Scranton ("Scranton Code"), § 360-1 to -2 (adopting, with amendments, BOCA National Property Maintenance Code, 5th ed. (1996) ("PM")).[1] Specifically, the notice contained a checklist of possible PM violations with a mark next to PM-303.8, which regards motor vehicles. L&I Housing Inspection, 7/12/12; *see also* PM-303.8. The notice also contained the following typed and handwritten provisions:

> [In type] **YOU ARE REQUIRED TO MAKE THE FOLLOWING CORRECTIONS WITHIN THE TIME FRAME GIVEN BY THE INSPECTOR.**
>
> <u>All rubbish and garbage must be removed from around the proberty and the property must be maintained during the year</u>.

---

[1] The record does not contain copies of the ordinances referred to by the Enforcement Officer Wallace or Inspector Liptai. However, the Scranton Code is available online at http://ecode360.com/SC1588. The Commonwealth Court has referred to this site in published decisions.

> [In handwriting] Please be advised your vehicle(s) are in violation of the city vehicle code. This requires all vehicles on your property to have a current inspection and registration. Failure to comply will result in vehicle(s) being towed at owner's expense.

L&I Housing Inspection, 7/12/12.

Five days later, on July 17, 2012, Inspector Liptai issued a second housing inspection notice indicating that Appellant was in violation of PM-303.4, regarding weeds. The inspector wrote:

> I'll be returning tomorrow (7-18-12) to remove any remaining vehicles not in compliance to city vehicle code. In addition the grass [and] weeds must be cut and cleaned up within 48 hrs. of this notice (7-19-12). Failure to comply will result in a citation being issued.

Housing Inspection, 7/17/12.

Both the July 12th and 17th notices contained Inspector Liptai's business phone number. There is no indication Appellant attempted to contact the inspector before the commencement of the underlying proceedings, although Appellant sent Enforcement Officer Wallace a letter demanding $5 million. *See* N.T., 2/5/13, at 15, 21.

On July 18, 2012, one day after issuing the second housing inspection notice, Inspector Liptai returned to Appellant's property with Officer Donnelly[2] and caused two cars to be towed. N.T. at 21. The inspector posted a third notice advising Appellant that the cars were towed and that Appellant would be "cited for grass[,] garbage[, and] debris on property[.]"

---

[2] The record does not contain Officer Donnelly's first name or department.

L&I Housing Inspection, 7/18/12. The inspector further noted that a "couch on porch must also be removed (safety)." *Id.*

The inspector returned the next day, July 19, 2012, with Officer Tobin[3] and towed a third car. N.T. at 21. Although there were additional cars on the premises the inspector would have towed as junk vehicles, they were not removed because they were "blocked in" by a "legal" vehicle, as determined by an Officer Lee.[4] *Id.* at 21, 27.

Inspector Liptai commenced the underlying proceedings against Appellant by issuing two non-traffic citations. Both citations referred to PM-303.4, regarding weeds, and in the "Nature of Offense" sections, stated that Appellant failed "to comply with request to clean up property debris and garbage and remove all illegal vehicles not in compliance with the city vehicle code." L&I Non-Traffic Citations, P-7321906-4 & P-9253962-4. Although the citations were originally dated May 18 and 19, 2012, the dates were amended by the magisterial district judge to July 18 and 19, 2012, respectively. On October 12, 2012, the magisterial district judge found Appellant guilty on both citations.

On October 31, 2012, Appellant timely appealed to the Court of Common Pleas. On February 5, 2013, the trial court held a trial *de novo* and found Appellant guilty. On February 12, 2013, the court entered orders

---

[3] The record does not contain Officer Tobin's first name or department.

[4] The record does not contain Officer Lee's first name or department.

requiring Appellant to pay the fines and costs previously imposed in the Magisterial District Court. This appeal followed. As discussed below, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement.

At the outset, we must consider three threshold issues: (1) whether this Court has jurisdiction over this appeal; (2) whether Appellant properly preserved his issues for appeal in a Pa.R.A.P. 1925(b) statement; and (3) whether Appellant properly briefed his issues on Appellant as required by Pa.R.A.P. 2101. For the reasons that follow, we conclude that our appellate jurisdiction has been perfected and the defect in Appellant's service of his Pa.R.A.P. 1925(b) statement do not require waiver of all of his issues. However, we conclude that defects in Appellant's *pro se* brief require waiver of some, but not all, of his claims.

The Commonwealth Court generally has exclusive jurisdiction over an appeal from a violation of a local ordinance. **See** 42 Pa.C.S. § 762(a)(4)(i)(B); **Commonwealth v. Asamoah**, 809 A.2d 943, 945 n.1 (Pa. Super. 2002). Nevertheless, an objection to the appellate jurisdictions of the Commonwealth Court and this Court may be waived by an appellee. **See** 42 Pa.C.S. § 704(a); Pa.R.A.P. 741; **Asamoah**, 809 A.2d at 945 n.1. We have the discretion to retain jurisdiction over an appeal filed improperly in this Court or to transfer the case to the Commonwealth Court. **See** 42 Pa.C.S. § 705; **Wilson v. School Dist. of Philadelphia**, 600 A.2d 210, 213 (Pa. Super. 1991).

Instantly, Appellant's appeal from the orders finding him in violation of local ordinances should have been filed in the Commonwealth Court. *See* 42 Pa.C.S. § 762(a)(4)(i)(B). However, Appellant's notices of appeal were timely filed, the Commonwealth did not object, and the issues properly raised by Appellant do not require the Commonwealth Court's particular expertise. *See Asamoah*, 809 A.2d at 945 n.1; *Wilson*, 600 A.2d at 213. Thus, there are no jurisdictional impediments to our consideration of this appeal.

We next consider whether Appellant properly preserved his issues by filing a Pa.R.A.P. 1925(b) statement and serving it on the trial judge.[5] Rule 1925 generally requires that a court-ordered statement must be filed in the trial court **and served** on the trial judge. *See* Pa.R.A.P. 1925(b), (b)(2); *Forest Highlands Community Ass'n v. Hammer*, 879 A.2d 223, 228-29 (Pa. Super. 2005). The failure to serve the trial judge may warrant waiver. *See Forest Highlands*, 879 A.2d at 228-29.

However,

> there are caveats to a finding of waiver. First, the trial court must issue a Rule 1925(b) order directing an [a]ppellant to file a response [in a timely manner[6]].

---

[5] The trial court, in its Pa.R.A.P. 1925(a) opinion, suggested that all issues were waived because Appellant failed to serve the court with a copy of his Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[6] *Forrest Highlands* was decided under a former version of Pa.R.A.P. 1925, which referred to a fourteen-day period to file and serve a statement of matters complained of on appeal. *See* Pa.R.A.P. 1925(b) (subsequently

> Second, the Rule 1925(b) order must be filed with the prothonotary. Third, the prothonotary must docket the Rule 1925(b) order and record in the docket the date it was made. Fourth, the prothonotary shall give written notice of the entry of the order to each party's attorney of record, and it shall be recorded in the docket the giving of notice.[7] If any of the procedural steps set forth above are not complied with, [an a]ppellant's failure to act in accordance with Rule 1925(b) will not result in a waiver of the issues sought to be reviewed on appeal.

*Id.* at 227 (citation omitted); *see also Commonwealth v. Hooks*, 921 A.2d 1199, 1202 (Pa. Super. 2007)). Additionally, under Pa.R.A.P. 1925(c)(1), this Court may remand a matter to the trial court to determine whether an appellant's Pa.R.A.P. 1925(b) statement has been served. *See* Pa.R.A.P. 1925(c)(1).

Instantly, the trial court's order requiring the filing of a Pa.R.A.P. 1925(b) statement apprised Appellant that "[t]he Statement shall be served on [the trial court] either in person or by mail as provided in Pa.R.A.P. 121(a)[.]" Order, 3/20/13, ¶ (c) ("Rule 1925(b) Order"). The distribution list of the order noted that copies were to be sent to Appellant and the District Attorney. However, neither the order nor the docket indicated that

---

amended May 10, 2007). The 2007 amendments to Pa.R.A.P. 1295(b) set forth a twenty-one day period for filing and serving a statement. *See* PA.R.A.P. 1925(b)(2).

[7] Because *Forest Highlands* was a civil case, it cited Pa.R.C.P. 236 in support of the requirement that notice of the order compelling the filing of a Pa.R.A.P. 1925(b) statement be docketed. The Rules of Criminal Procedure also contain provisions governing a court's filing, service, and docketing of orders in criminal proceedings. Pa.R.Crim.P. 114. *See also infra*, pp. 13-14 (concluding Rules of Criminal Procedure govern instant proceeding).

the order was, in fact, served on the parties. Accordingly, we decline to find Appellant's issues raised in this appeal waived based on a failure to serve his Pa.R.A.P. 1925(b) statement on the trial court. *See Hooks*, 921 A.2d at 1202.

Moreover, Appellant's issues relate to the legality of his summary convictions and not the exercise of discretion by the trial court. Accordingly, further discussion from the trial court is not necessary to permit meaningful appellate review. We thus decline to remand this matter for a determination of whether Appellant's Pa.R.A.P. 1925(b) statement was served on the trial court.

Lastly, we must comment on the *pro se* brief filed by Appellant.

> [I]t is an appellant's duty to present arguments that are sufficiently developed for our review. *Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. *Id.*; Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Gould*, 912 A.2d at 873. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. *Id.*; Pa.R.A.P. 2101.

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). "[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an

appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." **Commonwealth v. Lyons**, 833 A.2d 245, 251-52 (Pa. Super. 2003) (citations omitted).

Instantly, Appellant's *pro se* brief presents ten questions challenging his summary convictions and the constitutionality of Officer Liptai's removal of the vehicles from his property. Appellant's Brief at ix-x. In these ten questions, Appellant contends: (1) he was entitled to the dismissal of the proceedings on the summary violations because they were improperly commenced by L&I and prosecuted by the District Attorney's Office (Questions IV-V); (2) he was entitled to dismissal of the summary offenses based on the statute of limitations and irregularities in the Magisterial District Court (Questions I-II); (3) the issuance of multiple summary citations for a single underlying violation constitutes double jeopardy (Question III); (4) the removal of the vehicles from his property was illegal (Questions VI and VII); and (5) Inspector Liptai violated his constitutional rights to acquire and enjoy private property (Questions VIII-X).

The remainder of Appellant's brief contains, *inter alia*, summary of the argument, statement of the case, and argument sections, but is irregular. The format, certain irrelevant headings, and lengthy block quotations of law—sometimes relevant, sometimes not—create much confusion. Moreover, under the heading of "Legal Argument," Appellant reiterates his questions in non-distinctive headings. **See id.** at 21-33. With respect to

Questions VI, the sum of Appellant's argument is: "suggested answer in the negative." *Id.* at 24. As to Questions VII through X, Appellant merely block quotes various legal principles, which, for example, range in a single page from *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) to *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant's Brief at 29. That page is followed by four pages devoted to smatterings of legal quotations. *Id.* at 30-34. His brief concludes with the suggestion that if we affirm the summary violations, "judicial due process does not exist for the private white man, the endangered species, who does not give his consent now, nor ever gave his consent to any of the abovesaid molestation, oppression and fraud." *Id.* at 34.

We are compelled to conclude that Questions VI-X have been waived due to the failure to develop any cognizable issue relevant to a challenge to the summary convictions. *See* Pa.R.A.P. 2119(a)-(b). Appellant does not provide any meaningful argument connecting the factual circumstances of his case to the myriad principles recited in his brief. Furthermore, Appellant's claims do not challenge the underlying orders, which found him guilty and imposed fines for violations of an ordinance. Rather, they assail a related, but separate matter—the towing of his vehicles. Accordingly, we decline to address Questions VI through X, but will consider Questions I through V.

The Commonwealth Court[8] has stated:

> [A] review of a "trial court's determination on appeal from a summary conviction is limited to whether there has been an error of law or whether competent evidence supports the trial court's findings."  The Commonwealth has the never-shifting burden of proving all elements of a summary offense beyond a reasonable doubt.  In considering whether the evidence is sufficient to convict, the Court must "view all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth."

***Commonwealth v. Nicely***, 988 A.2d 799, 803 n.3 (Pa. Cmwlth. 2010) (citations omitted).

We summarize the provisions under which Appellant was cited and convicted.  As noted above, the City of Scranton has adopted the BOCA National Property Maintenance Code as part of its Property Maintenance Code.  ***See*** Scranton Code, § 360-1 to -2.  PM-105.1 permits a "code official"[9] to "enforce all of the provisions of this code."  PM-105.1.

PM-106.1 states:

> It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, remove, demolish, maintain, fail to maintain, provide, fail to provide, occupy, let to another or occupy or permit another person to occupy any premises,[10] property, structure or equipment

---

[8] We rely on the Commonwealth's jurisprudence in this matter given its jurisdiction over appeals from violations of local ordinances.

[9] A "code official" is "[t]he official who is charged with the administration and enforcement of this code, or any duly authorized representative."  PM-202.

[10] PM-302 defines "premises" as "[a] lot, plot or parcel of land including any structures thereon."  PM-302.

- 11 -

regulated by this code, or cause same to be done, contrary to or in conflict with or in violation of any of the provisions of this code, or to fail to obey a lawful order of the code official, or to remove or deface a placard or notice posted under the provisions of this code.

PM-106.1.

PM-303.4, entitled "Weeds," provides:

All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches (254 mm).  All noxious weeds shall be prohibited.  Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

PM-303.4.

PM-303.8, entitled "Motor vehicles," states:

Except as provided for in other regulations, **not more than one currently unregistered or uninspected motor vehicle shall be parked, kept or stored on any premises**, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled.

**Exception:**

A vehicle of any type is permitted to undergo major overhaul, including body work, provided that such work is performed inside a structure or similarly enclosed area designed and approved for such purposes.

PM-303.8 (emphasis added).[11]

---

[11] Scranton's Code contains several provisions relating to "junk vehicles." The Zoning Chapter of Scranton's Code defines a "junk vehicle" as, *inter alia*, a motor vehicle that "[d]oes not display a license plate with a current registration sticker and does not have a valid state safety inspection sticker[.]"  Scranton Code, § 445-23.  The Zoning Code further states:

Section 360-2(E) of the Scranton Code amends PM-106.2 to reads as follows:

> Any person who shall violate a provision of this code shall, upon conviction thereof, be guilty of a summary offense, punishable by a fine of not less than $200 and not more than $600, plus costs, or imprisonment not exceeding 90 days, in default of payment. **Each day that a violation continues shall be deemed a separate offense**. Any person found violating this chapter shall be responsible for payment required to bring the property effected by said violation into compliance with said code.

Scranton Code, § 360-2(E) (emphasis added). PM-106.3 provides, "In case of any unlawful acts the code official shall institute an appropriate action or proceeding at law to exact the penalty provided in Section PM-106.2." PM-106.3.

---

> Within a residential district, no motor vehicle that does not display current registration and current safety inspection (or safety inspection and registration that expires less than 90 days prior) and no junk vehicle (as defined by Article II) shall be parked or stored in any way that is visible from a public street or an adjacent dwelling.

Scranton Code, § 445-56(B)(2).

Additionally, the Chapter on "Vehicles, Abandoned and Junk" defines a "junk vehicle" as, *inter alia*, "[a] vehicle not possessing a current and valid registration and a current official inspection sticker." Scranton Code, § 438-1. That Chapter makes it unlawful to "park, store, keep or maintain on private property a junk vehicle for more than 48 continuous hours." Scranton Code, § 438-11. We note that Section 438-14 contains an enforcement provision referred to by Investigator Liptak at the trial *de novo*.

In light of the enforcement provision set forth in Section 360-2(E), which, *inter alia*, permits up to ninety days' imprisonment upon default of payment, we regard the underlying summary cases against Appellant as "criminal proceedings." **See** Pa.R.Crim.P. 100 (noting Rules of Criminal Procedure govern criminal proceedings), 103 (defining "Penal Laws" and "Criminal Proceedings" as including "ordinances which may provide for imprisonment . . . upon failure to pay a fine or penalty"); **Borough of West Chester v. Lal**, 426 A.2d 603, 605 (Pa. 1981); **Commonwealth v. Spontarelli**, 791 A.2d 1254, 1258 (Pa. Cmwlth. 2002). Accordingly, the Rules of Criminal Procedure apply.

With respect to Appellant's claims that the underlying proceedings were improperly commenced by an L&I inspector and prosecuted by the District Attorney, we note the following. Inspector Liptai, as a code official, is a "law enforcement officer" within the meaning of the Rules of Criminal Procedure and is authorized to issue or file a citation commencing a summary case. **See** PM-105.1; Pa.R.Crim.P. 402. Moreover, under Pa.R.Crim.P. 454(C), the attorney for the Commonwealth "may appear and assume charge of the prosecution." Pa.R.Crim.P. 445(C). It is beyond cavil that a District Attorney is an attorney for the Commonwealth. **See** 16 P.S. § 1402(a) (stating that district attorney "shall conduct in court all criminal and other prosecutions, in the name of the Commonwealth"); **Commonwealth v. Bailey**, 775 A.2d 881, 886 (Pa. Cmwlth. 2001). Accordingly, there is no

merit to Appellant's claims, presented in Questions IV-V, that Inspector Liptai improperly commenced the proceeding or the Office of the District Attorney could not represent the Commonwealth.

As to Appellant's remaining claims, we note, with dismay that the citations issued against Appellant listed only PM-303.4, which relates to the height of weeds or plant growth, as the predicate offense.[12] Moreover, as Appellant notes, the dates originally listed in the citations created additional confusion.

In this regard, Pa.R.Crim.P. 109 states, in relevant part:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a . . . citation . . . unless the defendant raises the defect before the conclusion of the trial in a summary case . . . **and** the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109 (emphasis added).

Instantly, Inspector Liptai's July 12, 2012 notice apprised Appellant of his alleged violation of PM-303.8, relating to motor vehicles, and referenced his need to have his vehicles registered and inspected. Both the July 12th and July 17th notices, as well as both citations, referred to the requirements related to his vehicles. It further appears that Appellant had actual notice of violations related to his vehicles, as he attempted to show one of his vehicles was registered at the time Inspector Liptai caused it to be towed.

---

[12] Inspector Liptai did not testify to the height of weeds or plant growth on Appellant's property.

*See* N.T. at 42-43. Appellant did not assert that he lacked notice of the offenses as alleged before the conclusion of the trial *de novo*, nor does he challenge the adequacy of the notices provided by the citations in this Court.

Thus, even if Appellant attempted to raise defects in the citations in the Magisterial District Court, the record establishes that he was apprised of the dates and nature of the offenses against him. Accordingly, we discern no impropriety in the trial court's decision to accept the magisterial district court's decision to amend the date of the citations to July 18 and 19, 2012. Moreover, we will review Appellant's summary convictions under PM-303.8 as was indicated in the July 12, 2012 L&I inspection,[13] and not PM-303.4 as was indicated in the citations.

As noted previously, violations of the Property Maintenance Code are continuing and must be deemed separate offenses for each day. Scranton Code, § 360-2(E). As there was sufficient evidence to sustain the conclusion that Appellant had "more than one currently unregistered or uninspected motor vehicle . . . parked, kept or stored" on his premises on July 18 and

---

[13] We also note that PM-303.8 and Section 438-11 share similar elements, *i.e.*, that vehicles are "currently unregistered or uninspected" or do not "possess[ ] a current and valid registration and a current official inspection sticker," respectively. **Compare** PM-303.8 **with** Scranton Code § 438-11. However, PM-303-8 prohibits having more than one currently unregistered or uninspected vehicle on a premises, while Section 438-11 prohibits "park, store, keep or maintain on private property a junk vehicle for more than 48 continuous hours."

19, 2012, a violation of PM-303.8 may be sustained for each date.[14]  Thus, we discern no merit to Appellant's contentions related to Questions I through III, namely, that the trial court improperly amended citations, that his convictions violated the statute of limitations, or that the multiple punishments for the Property Maintenance Code violations constituted double jeopardy.

Having addressed all issues properly raised in this appeal from the order finding Appellant guilty and imposing fines, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2014

---

[14] Similarly, because the offenses must be deemed separate for each day, it matters not for the purposes of the statute of limitations that the citations were originally dated May of 2012, so long as there was sufficient evidence that violations existed on July 18 and 19, 2012.

Instantly, although Appellant refers to his vehicles as privately owned, he presents no argument disputing that his property contained more than one unregistered or uninspected vehicle.  We further note that at the trial *de novo*, he presented the trial court with a temporary registration sticker for a GMC truck.  However, the cars towed from Appellant's property included a Saab, a Mercedes, and a third vehicle.