**COMMONWEALTH of Pennsylvania,**

v.

**Don R. ICKES, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 16, 2001.

Decided May 24, 2002.

Don R. Ickes, appellant, pro se.

Jerome T. Foerster, Harrisburg, for appellee.

Before PELLEGRINI, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Don R. Ickes (Ickes) appeals from an order of the Court of Common Pleas of Bedford County (trial court) which found Ickes guilty of violating Section 904 of the Game and Wildlife Code (Code), 34 Pa. C.S. § 904. We reverse.

On August 5, 1999, a district justice convicted Ickes of violating Section 904 of the Game Code which states:

> When an officer is in the performance of any duty required by this title, *it is unlawful for any person* to resist or interfere in any manner or to any degree or *to refuse to produce identification upon request of the officer.* A violation of this section is a summary offense of the first degree.

(Emphasis added.)

The events which led to Ickes' conviction occurred on April 2, 1999, when Ickes failed to produce identification when requested to do so by a Game Commission Officer (game officer).[1] Two game officers

---

1. Ickes does not have a hunting license and the game officers were not requesting the production of one. Rather, they sought iden-

had gone to the Ickes' property to speak with Ickes about a purported gaming violation which had occurred four months prior thereto.[2] The officers would not tell Ickes details about the alleged violation until he produced identification. Although the officers repeatedly requested Ickes to produce identification, Ickes refused, informing the game officers that he was advised by his attorney not to answer any questions and that they should contact his attorney. Because of his refusal to produce identification, the game officer issued Ickes a citation for violating Section 904 of the Code. A district justice found Ickes guilty of the charge. Ickes appealed to the trial court, which conducted a *de novo* hearing and subsequently found Ickes guilty of the violation and imposed a fine. This appeal followed.

On appeal, Ickes raises many constitutional issues. We conclude that Section 904 violates Ickes' rights under the 4th Amendment of the United States Constitution and reverse his conviction.[3] In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), a police officer requested Brown to produce identification after observing Brown looked suspicious in a high drug traffic area. Brown refused to identify himself and he was arrested and convicted for violating a Texas statute, which makes it a crime for a person not to give his name and address to an officer who has lawfully stopped him and requested the information. The United States Supreme Court reversed the conviction because the officers who stopped Brown to

ascertain his identity lacked reasonable suspicion to believe he was engaged in criminal activity.

> The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.

*Brown*, 443 U.S. at 52, 99 S.Ct. 2637.

Here, Ickes was arrested and convicted for his refusal to identify himself. The Commonwealth maintains that the game officers had reasonable suspicion to stop and question Ickes because they were investigating alleged criminal activity, which had occurred four months before the encounter. Because the game officers had a reasonable suspicion, the Commonwealth argues that *Brown* is distinguishable. We disagree.

In *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996), the police were investigating a house where drug activity was alleged to have occurred. The police observed Melendez leave the house, get in her car and drive away. Although the police did not observe any criminal activity on the part of Melendez, they nonetheless stopped her, searched her and transported her back to the house. The police argued

---

tification from Ickes to ensure that he was in fact Ickes.

**2.** The record does not indicate when charges were filed but does indicate that Ickes was found not guilty of violating 34 Pa.C.S. § 2302 which prohibits intentionally obstructing or interfering with the lawful taking of wildlife.

**3.** The Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon reasonable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

that they stopped Melendez for investigatory purposes. The Court stated, however, that:

[n]o person may be stopped for "investigation" in the absence of an articulable reason to suspect criminal activity, and the record contains no indication that the police had any basis to believe that Melendez was engaged in any criminal activity at the time of the stop. Instead, police had only the suspicion that Melendez was involved in illegal drug sales at a time and location wholly separate from the place she was stopped. *Terry* stops, however, are designed to address immediate suspicions of current illegal conduct.

The fact that Melendez may have engaged in illegal activity at some previous point in time, such did not provide a basis for a *Terry* stop.[4]

In this case, as previously stated, the game officers were investigating purported criminal activity, which had occurred four months previously. Thus, contrary to the Commonwealth's contention, the game officers did not have reasonable suspicion of current illegal conduct.

We also observe that although the game officers had no reasonable belief that Ickes was engaged in criminal activity, the game officers could nonetheless ask Ickes questions. His failure to reply, however, is not punishable.

There is nothing in the constitution which prevents a policeman from addressing questions to anyone on the streets.... [Given] the proper circumstances, the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest....

*Dunaway v. New York,* 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (citation omitted).

In this case, the game officers had no reason to believe that Ickes was engaged in criminal activity authorizing a *Terry* stop and although officers may ask questions to an individual on the street, the individual is not compelled to answer. In accordance with the above, we conclude that 34 Pa.C.S. § 904 is unconstitutional on its face under the 4th Amendment and we reverse Ickes' conviction.[5]

### ORDER

Now, May 24, 2002, the conviction of Don R. Ickes for violating Section 904 of the Game and Wildlife Code is reversed and Section 904 is declared unconstitutional.

---

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) permits officers, who have articulable and reasonable suspicion of criminal activity, to conduct a brief investigatory stop for the purpose of learning what they can. There is no requirement, however, that the person stopped answer questions which are put to him. Moreover, the *Terry* situation concerns "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat". *Terry,* 392 U.S. at 20, 88 S.Ct. 1868.

5. Because of our determination, we need not address the remaining issues raised by Ickes.