**[J-2-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,    :   No. 42 MAP 2020
                                        :
           Appellee             :   Appeal from the Order of the
                                          :   Superior Court at No. 151 EDA 2018
                                          :   dated January 24, 2020 Affirming
            v.                 :   the Judgment of Sentence of the
                                          :   Montgomery County Court of
                                          :   Common Pleas, Criminal Division, at
DAVID PACHECO,                  :   No. CP-46-CR-0002243-2016 dated
                                          :   November 29, 2017
           Appellant            :
                                          :   ARGUED:  March 9, 2021

**<u>CONCURRING AND DISSENTING OPINION</u>**

**JUSTICE WECHT**                                     **DECIDED:  November 17, 2021**

Over the past few decades, Americans have witnessed unprecedented developments in technology, perhaps no more so than in the field of personal cellular devices.  As the technological capabilities and uses of such devices have increased, so too has the public's reliance upon them.  It is fair to say that the cell phone (and other smart devices) has become virtually a "feature of human anatomy"[1] and is "such a pervasive and insistent part of daily life"[2] that "carrying one is indispensable to participation in modern society."[3]  Unlike many other intimate features of our lives, the use and enjoyment of these devices often is not free from scrutiny.  Each time a person receives an email, makes an outgoing call, sends a text message, or checks a weather app, a record of that digital connection is generated.  Whenever a person's device

---

[1]     *Riley v. California*, 573 U.S. 373, 385 (2014).

[2]     *Id.*

[3]     *Carpenter v. United States*, ___ U.S. ___, ___, 138 S. Ct. 2206, 2220 (2018).

connects to a cell tower as he or she moves about in public, whether by foot or vehicle, a record is created. Such a record—known as cell-site location information ("CSLI")—can tell a detailed story about us, potentially revealing our "familial, political, professional, religious, and sexual associations."[4] And when such personal history falls into the hands of law enforcement, it can prove quite incriminating.

In *Carpenter v. United States*, the United States Supreme Court characterized historical CSLI records as depicting the "privacies of life," areas in which people generally retain "a legitimate expectation of privacy."[5] But this case does not concern the use of cell-site records to track an individual's historical movements. Rather, the threshold question that we must answer is whether the same expectation of privacy exists when law enforcement uses CSLI to track the person *in real time*. I agree with the learned Majority's conclusion that *Carpenter*'s expectation-of-privacy ruling applies "with equal force to the collection of real-time CSLI."[6] For constitutional (and privacy) purposes, there is no meaningful difference between the use of historical records by law enforcement in order to recreate a person's past movements and the use of the same records as they are being created in real time to follow a person as he travels.[7] Both efforts provide law

---

[4]    *Id.* at 2217 (cleaned up).

[5]    *Id.*

[6]    Maj. Op. at 21.

[7]    As the Majority notes, the "pings" used to track a person in real-time enables law enforcement to locate a person within thirty meters of his or her actual location, and, as was the case here, this method of surveillance generally is not proscribed by any geographical boundaries. *See Id.* at 7 n.8. A police officer based in Erie, Pennsylvania, has the ability to request that a cellular company "ping" a person's cellular device and, almost instantaneously, the officer can locate that person in Selma, Alabama, to within about ninety feet—or the approximate distance between home plate and first base on a professional baseball field. It is hardly disputable that this awesome ability implicates the same privacy concerns recognized by the Supreme Court in *Carpenter*.

enforcement with an expansive peek into aspects of life that a person reasonably expects to keep private. Thus, I join parts I-VI of the majority opinion.

Having found that a person has an expectation of privacy in the records created by the use of cellular devices, the *Carpenter* Court erected an initial barrier between the government and those records. This initial barrier is far from insurmountable. It is instead "a familiar one," and it can be overcome in a "familiar" way: the police must simply "get a warrant."[8] In this case, Montgomery County officials and law enforcement officers did not get a search warrant before tracking David Pacheco's movements in real time. Instead, they obtained an "order" pursuant to Pennsylvania's Wiretap Act.[9] The operative provision of the Act empowers a trial court to authorize law enforcement officials to track a person in real time based merely upon a finding "[t]hat there is probable cause to believe that information ***relevant to an ongoing criminal investigation*** will be obtained."[10] This standard is far less stringent than what the United States and Pennsylvania Constitutions typically require. Orders issued under this standard are not the functional equivalent of search warrants issued in compliance with constitutional dictates. Because allowing this lower criterion to persist in the law will permit unwarranted intrusions into individuals' privacy, this section of the Wiretap Act is plainly unconstitutional, and should be stricken. Relying upon an inaccurate characterization by Pacheco of his own argument, the Majority declines to address the constitutionality of the relevant section of the Wiretap Act. This decision will countenance an intolerable number of unconstitutional invasions

---

[8] *Carpenter*, 138 S. Ct. at 2221.

[9] *See generally* 18 Pa.C.S. §§ 5701-82; *see also id.* §§ 5772-73 (setting forth the requirements for, and contents of, an order authorizing mobile communications tracking).

[10] *Id.* § 5773(a) (emphasis added).

of privacy until the issue returns to this Court. Accordingly, I respectfully dissent as to parts VII and VIII.

As a general rule, Pennsylvania law prohibits anyone, including law enforcement officials, from using electronic devices to discretely intercept communications or to track a person's movements.[11] At times, however, such covert surveillance is essential to the success of a criminal investigation. Undoubtedly mindful of this reality, the General Assembly built into the Wiretap Act a two-step mechanism for obtaining a court order authorizing otherwise prohibited electronic interception or surveillance, including the collection of "mobile communications tracking information."[12] First, pursuant to Section 5772, a prosecutor must file a formal application with a particular court, wherein the prosecutor must, *inter alia*, (1) provide to the court his or her identity and authority and the identity of the law enforcement entity performing the investigation; (2) certify that the information sought by the electronic surveillance is relevant to the investigation; and (3) submit an affidavit by a law enforcement officer establishing probable cause for the issuance of the order as described in Section 5773.[13] Second, if the requirements of Section 5772 are satisfied, the court reviewing the petition "shall enter an *ex parte* order" authorizing the requested action.[14] The order must contain certain information, including: (1) the existence of probable cause to believe that the targeted telephone will provide

---

[11]    *Id.* § 5771(a) (providing that "no person may install or use a pen register or a trap and trace device or a telecommunication identification interception device without first obtaining a court order under section 5773").

[12]    "Mobile communications tracking information" is defined by the Wiretap Act as "[i]nformation generated by a communication common carrier or a communication service which indicates the location of an electronic device supported by the communication common carrier or communication service." *Id.* § 5702.

[13]    *Id.* § 5772(b)(1)-(3).

[14]    *Id.* § 5773(a).

information relevant to an investigation; (2) the identity of the person who owns the device being targeted (or at least the person expected to be using that device); (3) the identity of the subject of the investigation; (4) the physical location of the telephone in some instances; and (5) a statement of the crimes being investigated and to which the electronic surveillance will relate.[15]

A Section 5773 order is not a formal search warrant. Indeed, the words "Search Warrant" do not appear anywhere on the order. Nor is the order a standard form that includes all of the typical sections that a formal search warrant contains. In fact, no one involved in its issuance or execution refers to these orders as search warrants.

But labels and titles are not the source a document's legal effect. It is the substance of the document or order that matters. For this reason, the Supreme Court of the United States has held that a court order can function as a search warrant, so long as the order contains certain fundamental elements. The High Court identified the essential elements of a search warrant in *Dalia v. United States.*[16] In that case, the Department of Justice sought to intercept telephone conversations between stolen goods conspirators, one of whom was Lawrence Dalia.[17] The Department applied for, and received, authorization to wiretap Dalia's phone pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[18] After intercepting Dalia's telephone calls, the Department requested an extension of the Title III order to include a wiretap for Dalia's

---

[15]     *Id.* § 5773(b)(1)(i)-(v).

[16]     441 U.S. 238 (1979).

[17]     *Id.* at 241.

[18]     *Id.* (citing 18 U.S.C. §§ 2510-2520).

office; the court granted the request.[19]   The information obtained via this electronic surveillance led to a five-count indictment against Dalia.[20]

Dalia moved to suppress the intercepted evidence, arguing, *inter alia*, that the federal agents were not authorized to enter his office to install the interception device without a valid search warrant because the Title III order was constitutionally insufficient.[21] The District Court found that the order was the functional equivalent of a valid search warrant, and that entering Dalia's office pursuant thereto was the most reasonable and limited intrusion necessary to execute the order.[22]   Thereafter, Dalia was convicted, and the Third Circuit, after rejecting Dalia's argument that a separate warrant was required for the entry into his office, affirmed Dalia's judgment of sentence.[23]

The Supreme Court granted *certiorari* and, pertinent to the present case, rejected Dalia's claim that a formal search warrant was required before law enforcement could enter his premises to install an electronic interception device.  The Court held that a court order, including a Title III order, can serve as the functional equivalent of a search warrant, and can authorize any action that would be permissible by search warrant, so long as the order meets certain criteria.[24]  The Court explained that:

> [t]he Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Finding these words to be "precise and clear," this Court has interpreted them to require only three things.  First, warrants must be issued

---

[19]   *Id.* at 242.

[20]   *Id.* at 243.

[21]   *Dalia*, 441 U.S. at 245.

[22]   *Id.* at 246.

[23]   *Id.*

[24]   *Id.* at 258-59.

by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. Finally, "warrants must particularly describe the 'things to be seized,'" as well as the place to be searched.

*Dalia*, 441 U.S. at 255 (citations omitted). The Court concluded that the Title III order was constitutionally adequate, as it contained all of the requisite elements of a traditional search warrant, including the provision of sufficient probable cause to support the magistrate's determination that Dalia "had been and was committing specifically enumerated federal crimes" and that he was using his office to facilitate the commission of those crimes.[25]

The question here then becomes whether the Section 5773(a) order that permitted law enforcement to track Pacheco's multi-state movements contained all of the constitutionally necessary elements—*i.e.*, whether the order functioned as though it were a formal search warrant. The answer to this question turns upon the constitutional adequacy of the probable cause element of Section 5773(a), which permits a search to occur based upon proof of probable cause "to believe that information relevant to an ongoing criminal investigation will be obtained from the targeted telephone." To distill the question even further, the real crux of the matter is whether the phrase "relevant to an ongoing criminal investigation" permits a judicial officer to issue a Section 5773(a) order based upon something less than the standard for probable cause mandated by our Constitutions. If that degree of proof falls below the traditional standard, then the Section 5773(a) orders that were issued in this case would be the least of the Commonwealth's worries. This circumstance would mean that each and every search authorized pursuant to that inadequate standard would be deficient. In other words, the statute itself would be facially unconstitutional.

---

[25] *Id.* at 256.

The Majority declines to address this important legal question, deciding instead that Pacheco did not advance a facial challenge to Section 5773(a). I respectfully disagree with that determination.

Ahead of trial, Pacheco moved to suppress the multi-state tracking evidence. Among other claims, Pacheco argued that the tracking could not be authorized by anything less than a formal search warrant. For instance, in his November 18, 2016 "Supplement to Motion to Suppress Evidence," Pacheco argued that the tracking of his movements in real-time constituted a search that only could be authorized upon a showing of probable cause and upon the issuance of a valid search warrant. Def.'s Suppl. Suppression Mot., 11/18/2016, at 2 ¶ 6. Pacheco noted that, despite being constitutionally compelled to do so, no person associated with the investigation and subsequent surveillance applied for a search warrant. *Id.* at ¶ 5. He asserted that a search of this nature could not "be authorized merely by a court order." *Id.* at ¶ 7.

Pacheco reiterated this argument in his memorandum of law in support of his supplemental suppression motion. Therein, Pacheco insisted that "[e]ven [though] the Orders issued in the present case were authorized under the Wiretap Act, the Orders are violative of the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, *because the Orders fail to satisfy the constitutional protections of the warrant requirement*." *See* Def.'s Mem. in Supp. of Suppl. Suppression Mot., 3/6/2017, at 14 (emphasis added). Then, in his second supplemental memorandum of law, Pacheco's argument shifted from an absolutist position in recognition of the fact that, when strictly construed, a court order can at times suffice as a substitute for a formal search warrant. *See* Def.'s Second Suppl.I Mem. Supp. Suppression Mot., 4/24/2017, at 1 ("To be constitutionally permissible, Court Orders authorizing surveillance pursuant to the Wiretap Act must contain the

constitutional safeguards which are equivalent to that of a warrant."). Pacheco conceded that, if strictly adhered to, the Wiretap Act could provide "sufficient safeguards" to authorize surveillance that otherwise would offend the "right to privacy protected by Article I, Section 8 of the Pennsylvania Constitution." *Id.* at 4.

Despite presenting this late-stage alternative argument, and despite focusing his arguments upon other issues related to the validity of the investigators' actions under the Wiretap Act, Pacheco never abandoned entirely his argument that the court orders are not search warrants.[26] His focus on other issues was reasonable, however, because, at the time, any facial challenge to the statute authorizing the multi-state tracking of his movements would have confronted a significant hurdle. Before Pacheco could have argued that a search warrant was required, he would have had to prove that the tracking, in fact, was a search. And to do that, he would have had to prove that he had an expectation of privacy in his movements. Two lines of Supreme Court precedents likely would have road-blocked that argument.

First, in *United States v. Knotts*,[27] the Court held that a person generally cannot invoke an expectation of privacy—at least not one that society would deem reasonable— in his or her physical location or movements in public. The Court explained that any such expectation would be unreasonable, given that, by openly moving about in public, the

---

[26]     *See* Pacheco's Super. Ct. Br., 151 EDA 2018, 7/25/2018, at 23 ("Appellant argued in the lower court that a warrant was required to engaged in such real-time location tracking of Appellant through his cell phone signal, and that the orders entered under the . . . Wiretap Act were not sufficient to satisfy constitutional safeguards."); *id.* at 28 (arguing that "a warrant was required to obtain his real-time CSLI under existing search and seizure jurisprudence prior to *Carpenter*").

[27]     460 U.S. 276 (1983).

person voluntarily has displayed his movements to anyone who cared to look.[28] The second line of cases involved the third-party doctrine. In *United States v. Miller*,[29] and in *Smith v. Maryland*,[30] the Supreme Court held that typically a person retains no reasonable expectation of privacy in information or records that he or she voluntarily exposes to third parties. With these precedents on the books and seemingly governing the case, Pacheco's attorney likely believed that any attempt to argue that Pacheco had an expectation of privacy in his movements up and down the eastern coast of the United States would fail.

But then the law changed dramatically. The decision in *Carpenter* significantly altered the landscape underneath (or the legal framework above) this case. In an instant, Pacheco arguably could claim an expectation of privacy in his movements and assert that the real-time tracking of his movements constituted a search for constitutional purposes. In his brief to the Superior Court, Pacheco reverted to his initial position that a court order, even one issued pursuant to the Wiretap Act, could not take the place of a validly issued search warrant. Pacheco also contended that, even if an order could be substituted for a warrant, a Section 5773(a) order was not the functional equivalent of a search warrant.[31] Of particular relevance here, in advancing this latter argument, Pacheco did not focus upon the specifics of his case or upon the sufficiency of the allegations contained within the four corners of the materials offered in support of the Section 5773(a) order. Pacheco

---

[28]    *Id.* at 281-82; *but see United States v. Jones*, 565 U.S. 400, 412 (2012) (recognizing that a person's expectation of privacy in the records of his movement that were obtained using a GPS device installed on a vehicle).

[29]    425 U.S. 435 (1976).

[30]    442 U.S. 735, 740 (1979).

[31]    *See* Pacheco's Super. Ct. Br. at 28-32.

argued instead that Section 5773(a) orders could not serve as search warrants because the orders may issue merely upon a demonstration of probable cause "that information relevant to an ongoing investigation" will be recovered, which he asserted is a lesser degree of proof than is needed to obtain a search warrant. Pacheco claimed that this requirement—which is universal to all Section 5773(a) orders—does not rise to the level of individualized suspicion necessary to satisfy constitutional demands.[32]

Pacheco continued this broad attack upon the validity of Section 5773(a) orders when he petitioned this Court for review of the Superior Court's decision affirming his judgment of sentence. In his Petition for Allowance of Appeal, Pacheco argued, *inter alia*, that a Section 5773(a) order is not based upon a "judicial determination of probable cause that the cell phone is being used in connection with the commission of a particular offense," nor does it require proof that the tracking "will lead to **evidence of a crime** or **contraband**, or that criminal activity is occurring or likely to occur in the places protected by a reasonable expectation [of privacy]."[33] Pacheco noted that the lesser standard— probable cause of the existence of information that is "relevant to an ongoing investigation"—affects the entire statutory scheme as it misdirects the authorizing judicial officer, essentially allowing that officer to permit individualized tracking based upon lesser proof than our Constitutions require.[34] Pacheco contended that a Section 5773(a) order "circumvent[s] the particularity requirement" and gives law enforcement officers "*carte blanche*" to monitor a person and his movement for a substantial length of time.[35]

---

[32] *Id.* at 29.

[33] Pet. for Allowance of Appeal, 79 MAL 2020, 2/24/2020, at 12 (emphasis in original).

[34] *Id.* at 18-19.

[35] *Id.* at 19-20.

We granted *allocatur* to take up Pacheco's broad attack on Section 5773(a). Unsurprisingly, then, in his principal brief Pacheco maintains his criticism of Section 5773(a), which he claims does not authorize the functional equivalent of a search warrant. The vast majority of Pacheco's brief is dedicated to his contention that the elements of a Section 5773(a) order do not add up to a constitutionally valid search warrant.[36] Focusing upon the standard of proof element of Section 5773(a), Pacheco reiterates that, by mere operation of the statute, any resulting order violates the probable cause and particularity requirements of the Fourth Amendment and Article I, Section 8.[37] At almost every turn, Pacheco argues in broad terms, directing his criticisms at the statute facially instead of how it has been applied only in his circumstances. The following is an example:

> An [o]rder issued under Section 5773 contains no such safeguards. Review of the statute reflects that [Section] 5773 requires only probable cause that information relevant to an ongoing criminal investigation will be obtained from the targeted telephone; the identity of the person, if known, to whom the phone is leased or whose names is listed on the targeted telephone; and the identity, if known, of the person [who] was the subject of the criminal investigation. A look at these factors reflects that these are wholly different and fall well short of the specificity and particularity normally engendered by a warrant.

Pacheco's Br. at 37. Even the Commonwealth characterizes Pacheco's argument as a facial challenge to the constitutionality of Section 5773(a).[38]

For reasons unknown, in his reply brief, Pacheco denies that his challenge to Section 5773(a) is a facial one.[39] Because this statement conflicts with the substance of Pacheco's arguments throughout, Pacheco's characterization of his argument causes

---

[36]  *See* Pacheco's Brief at 25-38.

[37]  *Id.* at 26-28.

[38]  *See* Commonwealth's Br. at 11.

[39]  *See* Pacheco's Reply Br. at 18.

even the Majority to do some head-scratching.[40]  Nonetheless, rather than resolving this dispute on the merits and deciding the true character of Pacheco's claim, the Majority simply takes Pacheco's late word for it and declines to address the important and novel question presented in this case.  I would press on.

Right up until the final section of Pacheco's very last filing in this case, Pacheco has argued two material points:  (1) court orders are not equivalent to valid search warrants; and (2) even if they were, Section 5773(a) orders in particular are deficient because the Wiretap Act's probable cause element, by its plain and unambiguous terms, authorizes searches using a standard less than what is constitutionally required.  *Dalia* undoubtedly refutes the first point.  However, the second issue remains unresolved.  Even the most cursory review, such as that set forth above, reveals that Pacheco's argument is a facial challenge.  At all relevant times, Pacheco has argued that the probable cause element—as written—constitutionally is insufficient.  If true (and, as I explain below, I believe it is), then the statute is unconstitutional each and every time it is used.  The thrust of this argument is not now, and has never been, that the probable cause element of Section 5773(a) faltered in this particular instance.  The Majority admits as much, noting that Pacheco's "Fourth Amendment challenge is based not upon the orders themselves, but on the statutory language upon which the orders were issued. . . ."[41]  Pacheco's claim can only be considered a facial challenge.

Pacheco's last minute mischaracterization of his own argument should be disregarded for two compelling reasons.  First, we should not lose sight of the legal paradigm that underlies the merits of this case.  Per *Dalia*, a court order, however styled

---

[40]    *See* Maj. Op. at 29 (characterizing Pacheco's claim that he is not raising a facial challenge to Section 5773 as "somewhat inconsistent[]" with the particulars of his argument).

[41]    Maj. Op. at 24.

or titled, legally can take the place of a search warrant. A court's task in determining whether one can substitute for the other is to go beyond the title, dig below the surface, and ascertain the true character of the document. In other words, we do not automatically cast aside court orders simply because they say "Order" instead of "Search Warrant." We eschew the rigid formalism of definitive titles and magic words. Instead, we scour the averments. We review the sworn statements of affiants. We analyze, we critique, and we apply legal tests. It is the substance of a submission that matters, not the words at the top of the page.

If it is the substance that matters when deciding whether a court order is a search warrant, then it seems at least inconsistent, if not unfair, to uncritically accept Pacheco's erroneous characterization of his own argument on that very same point. Either the substance matters or it doesn't. It cannot matter only for the legal analysis, but not when construing a party's argument pertaining to that legal analysis. There is no principled way to draw that line.

Second, going beyond a party's assertion and deciding on our own the true legal character of an argument is consistent with an aspect of our decision in *Commonwealth v. Brown*.[42] In that case, the Commonwealth conceded that Brown was entitled to commutation of the jury's verdict imposing a death sentence, and believed that such agreement was an act of prosecutorial discretion that obviated the need for this Court to independently review the case.[43] We rejected this position, noting that neither the

---

[42]     196 A.3d 130 (Pa. 2018).

[43]     *Id.* at 143.

language of the statute at issue (the PCRA[44]) nor any controlling precedents supported the notion that a party can remove a legal issue from judicial review by assent.[45]

To be sure, there are some differences between *Brown* and this case. In *Brown*, the Commonwealth sought to have this Court rubber-stamp its preferred legal outcome. Here, at issue is the binding effect of a party's characterization of its own argument. But I see no good reason why the ramifications of *Brown* should not apply here. Fairly read, *Brown* stands for the proposition that a party cannot bind this Court, nor can a party remove from this Court its prerogative to make its own decisions and reach its own conclusions. A party's perspective on an issue or in a case is valuable. But that perspective always has been—and remains—persuasive in nature. It has no legally binding effect on this Court. Even when a party is emphatic in its characterization of its position, this Court is not bound by a party's misguided, inaccurate, and last-minute proclamation.[46] It is incumbent upon us to assess cases independently and to reach our own conclusions, as *Brown* demands.

Properly construed, there can be no material dispute as to the character of Pacheco's principal argument. The substance of that argument is as follows: per *Carpenter*, the type of tracking utilized in this case is a search, but because the probable cause element of Section 5773(a) does not meet the minimum constitutional requirements, a Section 5773(a) order can never stand in for a valid search warrant. This argument is in no way dependent upon the particulars of this case, nor upon how the

---

[44]    Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46.

[45]    *Brown*, 196 A.3d at 144-49.

[46]    To be clear, this case differs from a waiver resulting from the failure to preserve an issue. In those situation, the question is whether an issue is available for this Court to review. The present situation asks this Court to evaluate the legal character of a particular issue or argument, a task that ultimately should be subject to this Court's final determination.

order was obtained or executed. The claim is directed at the inadequacy of a statutory element, and, if correct, would mean that the statute would be unconstitutional in every instance. It cannot reasonably be construed as an as-applied challenge, regardless of how Pacheco mischaracterize it at the last minute. I am reminded of the old adage that, if it looks like a duck, swims like a duck, and quacks like a duck, then it's a duck. That same duck can't become a horse merely by calling itself one—it's still a duck.

The consequences of uncritically accepting Pacheco's inaccurate characterization of his argument are troubling. As a general matter, this Court does not take cases to resolve one party's legal problems. We typically review a case in order to resolve novel legal issues that have statewide implications. When we granted review of this case, we did so to decide whether Section 5773(a) orders authorized searches in a manner consistent with the Fourth Amendment, not merely whether Mr. David Pacheco's rights were violated. The answer to that important first question now must await another day. If the statute is unconstitutional—and I believe that it is—it will continue to be used to authorize searches, resulting in countless invasions of privacy and constitutional violations, unless and until the issue returns someday to this Court. These violations will persist because this Court chooses to ignore the substance of the arguments presented to us, and instead opts to accept uncritically Pacheco's flawed understanding and mischaracterization of his own argument. The consequences that result from the Majority's decision to endorse Pacheco's late-game decision to punt this very important issue are unfortunate and avoidable.

Because a facial challenge is preserved, argued, and fully briefed, and is an issue of substantial importance, I would reach that issue.[47]  I would find Section 5773(a) unconstitutional.  And I would strike it down accordingly.

Among other requirements, following judicial review and approval, Section 5773(a) permits law enforcement officials to track a person in real time after a demonstration of "probable cause to believe that information *relevant to an ongoing criminal*

---

[47]    I fully endorse the Majority's holding that individuals have a reasonable expectation of privacy in the collection of real time CSLI records.  *See supra* at 2-3.  However, the Majority's ruling can only go so far in resolving this case.  Moving forward, it cannot bear the weight that the Majority attempts to place upon it.

The Majority asserts that its opinion compels the Commonwealth to "comply fully with Fourth Amendment constitutional protections" and to "apply Section 5773 in a constitutional manner consistent with this opinion."  Maj. Op. at 23 n.17.  If the Commonwealth fails to do so, it will "face suppression of the real-time CSLI."  *Id.*  While I respect the Majority's optimism, I do not share its belief that today's opinion will do what the Majority promises.  No one can dispute that the Commonwealth's agents must operate within the bounds of the Fourth Amendment.  The problem is that the Majority's opinion does not clearly set those boundaries in the real-time data collection context.  Prosecutors and law enforcement officers seeking the collection of real-time CSLI still must proceed according to the terms set forth in Section 5773.  That section requires the authority to issue an order—perhaps the functional equivalent of a search warrant—when that authority finds "probable cause to believe that information relevant to an ongoing criminal investigation."  18 Pa.C.S. § 5773(a).  Today's Majority decides not to address the constitutionality of this standard.  Hence, it stays on the books, and it remains the standard that judges are bound to apply.  Without knowing whether this weaker standard comports with the Fourth Amendment, prosecutors, law enforcement agents, and issuing judges are left to guess whether it passes constitutional muster.  Only when we decide whether the statutorily mandated standard is constitutional can the Commonwealth's agents (and anyone else) know whether orders issued pursuant to Section 5773 are done "in a constitutional manner."  Maj. Op. at 23 n.17.  Until then, judges have no choice but to apply what I believe is a constitutionally insufficient standard.  There is no sound reason for us to facilitate perpetuation of such unnecessary constitutional violations.

The Majority cannot have it both ways.  It cannot assert that its opinion compels the Commonwealth, when seeking a tracking order, to comply fully with the protections of the Fourth Amendment, while at the same time declining to tell the Commonwealth precisely what the Fourth Amendment requires with regard to that tracking order.  The case is before us today.  I would leave no room for doubt.

***investigation***"[48] will be found.  The question here is whether the highlighted language satisfies basic constitutional standards.  It does not.

The Fourth Amendment to the United States Constitution shields individuals from both federal and state governmental[49] violations of their right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  The Fourth Amendment "protects people, not places."[50]  Thus, "[w]herever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures."[51]

A search—*i.e.*, an intrusion upon one's reasonable expectation of privacy, such as the real-time collection of CSLI that occurred here—triggers the Fourth Amendment's protections.  Review of the constitutionality of a search begins with reasonableness—"the ultimate measure of the constitutionality of a governmental search."[52]  The Fourth Amendment's Warrant Clause provides the two principal pillars of reasonableness: probable cause and a search warrant.  Together, those requirements "provide the yardstick against which official searches and seizures are to be measured."[53]

Section 5773(a) orders patently require a demonstration of probable cause. However, the inquiry does not end, nor are our Constitutions satisfied, simply by doing a word search that reveals the phrase "probable cause" in the operative statutory section. The question that must be asked is "probable cause as to what?"  What is constitutionally

---

[48]     18 Pa.C.S. § 5773(a).

[49]     *See Elkins v. United States*, 364 U.S. 206, 213 (1960).

[50]     *Katz v. United States*, 389 U.S. 347, 351 (1967).

[51]     *Id.* at 359.

[52]     *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

[53]     *New Jersey v. T.L.O.*, 469 U.S. 325, 359-60 (1985) (Brennan, J., concurring).

sufficient probable cause?  Specific to this case, the question is whether a search is constitutional upon a mere showing of probable cause to believe that the search will produce information "relevant to an ongoing criminal investigation."  The answer is that our Constitutions require more than relevance to an investigation.

Some examples of the Supreme Court's formulation of probable cause lend strong support to this conclusion.  In *Dalia*, the Supreme Court explained that, when seeking a search warrant, law enforcement "must demonstrate to the magistrate their probable cause to believe that '**the evidence sought will aid in a particular apprehension or conviction' for a particular offense**."[54]  In *Birchfield v. North Dakota*, the Court noted that search warrants protect a person's privacy by, among other things, ensuring "that a search is not carried out unless a neutral magistrate makes an independent determination that there is **probable cause to believe that evidence will be found**."[55]  In *Florida v. Harris*, the Court held that a "police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that **contraband or evidence of a crime is present**."[56]  In *Illinois v. Gates*, the Court defined the "task of the issuing magistrate" as determining whether "there is a fair probability that **contraband or evidence of a crime will be found in a particular place**."[57]  And in *Brinegar v. United States*, the Court emphasized that probable cause, as a standard, must be "correlative to what must be proved."[58]  This requires more than bare suspicions.  Thus, the Court explained that probable cause for constitutional purposes exists "where the

---

[54]     441 U.S. at 255 (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967)).

[55]     136 S. Ct. 2160, 2181 (2016) (emphasis added).

[56]     568 U.S. 237, 243 (2013) (emphasis added; cleaned up).

[57]     462 U.S. 213, 238 (1983) (emphasis added).

[58]     338 U.S. 160, 175 (1949).

facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution **in the belief that an offense has been or is being committed**."[59]

Our cases generally have tracked the Supreme Court's descriptions of probable cause as well. For instance, in *Commonwealth v. Wallace*, we described probable cause as a factual and inferential demonstration that "there is a fair probability that **contraband or evidence of a crime will be found in a particular place**."[60] Put simply, probable cause "is a reasonable ground for belief of guilt."[61]

As these few examples demonstrate, our Constitutions generally require law enforcement officers to convince neutral and detached judges that those officers possess sufficient articulable information that a search of a particular location or person probably would produce contraband or specific evidence of a crime at that location or on that person. State actors constitutionally are prohibited from simply searching for any old item for any old reason. The Fourth Amendment limits searches to those predicated upon proof that evidence of criminality likely will be found. Even viewed in a non-technical, common-sense manner,[62] the probable cause showing must convince the reviewing judicial officer that the search will be directed at specific persons or places, and will target

---

[59]    338 U.S. at 175-76 (emphasis added; internal quotation mark and citation omitted).

[60]    42 A.3d 1040, 1048 (Pa. 2012) (emphasis added; cleaned up).

[61]    *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881).

[62]    *Wallace*, 42 A.3d at 1048.

particular evidence of criminality, so as to prevent unconstitutionally broad general searches guided only by the discretion of the officers on the beat.[63]

Neither this Court nor the Supreme Court has ever found constitutionally sufficient probable cause only upon a showing that the police might find evidence "relevant to an ongoing criminal investigation"[64]  This is no standard at all.  It offers no definite boundaries or means by which to cabin an investigator's discretion.  It does not require proof that contraband or evidence of a crime will be uncovered from the electronic tracking, which, as demonstrated above, is the cornerstone of the probable cause demonstration.  So long as the requesting law enforcement officer can aver that some information that is even tangentially related to some criminal investigation might be discovered by the real-time CSLI records, the element is satisfied.  By this standard, law enforcement legally could track—in real time and without meaningful temporal or geographical limitations—any person theoretically related to the target of an ongoing investigation.  This would permit law enforcement to track children, spouses, friends, colleagues, cousins, and co-workers.  For instance, the officers do not have to prove that the spouse of an investigative target is involved in the criminal activity, or that tracking that spouse would produce contraband or evidence of criminality.  All that investigators would have to aver is that tracking these individuals will produce information "relevant to an ongoing investigation."

If further support is needed for those on the fence to conclude that the "relevant to" standard fails on a constitutional level, *Carpenter* settles the matter.  The *Carpenter* Court reviewed a provision of the Stored Communications Act similar to Section 5773(a),

---

[63]     *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) ("Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.").

[64]     18 Pa.C.S. § 5773(a).

which authorized the collection of CSLI upon a showing of "reasonable grounds" to believe that the records were "relevant and material to an ongoing investigation."[65] The Court held that the "reasonable grounds" element fell "well short of the probable cause required for a warrant."[66] Obviously, that specific holding has no application here, as the Wiretap Act uses the term "probable cause" and not "reasonable grounds." However, the Supreme Court did not stop there. The Court looked to the second element—"relevant and material to an ongoing investigation"—which is nearly identical to the provision presently at issue. The *Carpenter* Court emphasized that all requests for a search must contain "some quantum of individualized suspicion" to be constitutionally permissible.[67] Because the "relevant and meaningful to" portion of the statute required no such individual contemplation, the Court held that the standard was a "gigantic departure from the probable cause rule."[68]

There is no material distinction between the standard condemned by the *Carpenter* Court and the Wiretap Act's "relevant to" standard. They are identical for constitutional purposes. And just like the now-defunct standard from the Stored Communications Act, Section 5773(a) requires no level of individualized suspicion, represents a "gigantic departure" from minimum constitutional requirements, and "is not a permissible mechanism" for justifying searches and seizures.[69] Accordingly, I would strike down

---

[65]    *Carpenter*, 138 S. Ct. at 2221 (quoting 18 U.S.C. § 2703(d)).

[66]    *Id.*

[67]    *Id.* (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 560-561 (1976)).

[68]    *Id.* (cleaned up).

[69]    *Id.*

Section 5773(a) as facially unconstitutional.[70]  By its terms, the section never can authorize the search of a person, *e.g.*, by tracking his or her movements in real time via CSLI, in a constitutional way.  Any order issued thereunder, including those authorizing the tracking of Pacheco's travels, necessarily is void *ab initio*.

Because a Section 5773(a) order necessarily is void, there is no need to further analyze whether the Commonwealth adequately demonstrated probable cause here.  No amount of probable cause can convert an unlawful order into a constitutional one.  It is not the sufficiency of the information supporting the search that has constitutional significance in this instance; it is the process by which all Section 5773(a) orders are issued that is unconstitutional.  The fact that an appellate court can scour the record years later and find sufficient cause within the four corners of an affidavit does not validate an otherwise unconstitutionally authorized search.  Doing so "bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the . . . search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."[71]  Such a *post hoc* review process ignores "the procedure of antecedent justification . . . that is central to the Fourth Amendment."[72]

---

[70]  In addition to failing to afford constitutionally adequate individualized suspicion, Section 5773(a) likely is facially unconstitutional for another reason:  it is overbroad.  *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1223, n.36 & 37 (Pa. 2009); and *Commonwealth v. Ickes*, 873 A.2d 698, 702 (Pa. 2005).  However, unlike the present facial challenge, Pacheco has never raised or preserved an overbreadth challenge.

[71]  *Katz*, 389 U.S. at 358 (omissions in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

[72]  *Id.* at 359 (omissions in original) (quoting *Osborn v. United States*, 385 U.S. 323, 330 (1966)).

Thus, while I join the Majority's extension of *Carpenter*'s expectation of privacy ruling to the present circumstances, I respectfully dissent from the Majority's decision to exalt form over substance and from its derivative decision not to assess the constitutionality of Section 5773.